**BC**

# UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

**FILED**

4/21/2025

MAM

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Dorsey, Cordarro T.
Plaintiff,


                    v.

Officers Ponce #11493, Sanchez,
Turner #14203, Sergeant Campos
#2153 (in their individual
capacities),**
**Defendants.

**Case No. 25-cv-01212**


**Honorable Rebecca R. Pallmeyer**

---

## AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, DAMAGES, AND INJUNCTIVE RELIEF

---

### **I. PARTIES**

1. Plaintiff: Dorsey, Cordarro T., a private American national, and resident of the United States.
2. Defendants: CPD Officers Ponce, Sanchez, Turner, and Sergeant Campos, whom failed to act under color of law.

### **II. JURISDICTION AND VENUE**

3. Jurisdiction: 28 U.S.C. §§ 1331, 1343, 1367, & 42 U.S.C. 1983
4. Venue: Cook County, Chicago Police Dept. 22nd District.


### **III. FACTUAL BACKGROUND**

5. on February 23th 2023, at approximately 10:00 p.m. I was unlawfully stopped by Chicago Police Dept.Officers Ponce, and Sanchez for allegedly having illegal tints, and for having my front license plate displayed in my front window instead of bracketed to the front of the car. Initially officer Ponce stated both offenses were the reason for his stop. I informed him my rear plate was visible as well as my front plate. Ponce claimed it specifically had to be on the bracketed on my car. I informed Ponce my car did not have illegal tints, and that I was informed by the Secretary of State that as long as the rear is attached properly and the front plate is visible " I would be fine". I properly elaborated these facts to Ponce. Instead of considering these circumstances Ponce persisted and insisted I exit my car, then began to threaten me to exit. I informed the officers (officer Sanchez passenger officer) I am a valid driver and that I had all my valid credentials. I then informed them that if they continue to insist I exit my vehicle, that I would like a sergeant be present. officer Ponce deliberately ignored my request for a sergeant while he unlocked my driver side door himself, and then swung it open aggressively, He continued to threaten me telling me I am going to jail when the Sergeant arrives. Subsequently another officer,(officer Turner) pulled his squad car in front of my car aggressively and blocked me in with his squad car; further seizing me unlawfully. Officer Turner approached me also demanding I exit my vehicle with no probable cause or suspicion of a crime being committed. Further ignoring my human rights, and showing no de escalation tactics whatsoever, officer Ponce then reached inside my car and unfastened my safety belt. Despite my requests to not be touched or forced (searched nor seized) until a sergeant is present.

I further invoked my rights, and informed the officers I am not refusing but I am in fear for my life due to their aggression. Therefore "I would like a sergeant present." Officer Sanchez whom stood on the passenger side harassing my passenger intervened in an attempt to coerce me out my vehicle without the sergeant present as well. I informed these officers several times "I do Not consent to any searches or seizures". I informed them that if they "feel a traffic infraction truly had been committed" then write a ticket and It will be disputed later". Each Officer ignored my attempts for de escalation, and continued to demand I exit my car, unlawfully. Once Sergeant Campos arrived approached me while I remained seated in my property; and then explain to him the nature of the unlawful actions and traffic stop. I also informed him the validity of my credentials, and how I did not consent to any searches or seizures. At this point we were approximately 20 minutes into the stop, and Sergeant Campos then ordered me out of my car while officers Ponce and Turner immediately placed me in hand cuffs. While detaining and seizing me without probable cause, Officers Ponce, Turner, and Sgt. Campos, forcibly removed my phone from my hand while I was recording the stop violating my 1st and 4th amendment rights. They removed me from the proximity of my car, and presumed to search my car and trunk for 20 more minutes. All while me and my passenger stood in the freezing cold with handcuffs on while it rained and snowed on us. Officer Ponce stroared all thru my car on some unknown hunt, and then Ponce went as far as ripping my carpet and flooring from under my center console; as if I had a hiding spot somewhere. These officers searched my whole vehicle with no actual probable cause or warrant, Each Officer ignored my constitutional rights, violated my rights as a living person, damaged my personal property, and initiated no consensual and offensive, and physical contact with me. I informed the officers I would be filing a civil lawsuit for their actions and violations towards me and my property. In March of 2023 I delivered via personal delivery a Notice of Intent and FOIA request for Each Defendant Officers body camera, and Squad car footage for the date of traffic stop. Defendant officers, along with Chicago Police dept.'s 22nd District have yet to provide the Footage requested.

## **III. FACTUAL ALLEGATIONS**

6. Unlawful Stop: On February 23, 2023, Defendants stopped Plaintiff's vehicle, alleging minor traffic violations (tinted windows, improperly displayed license plate). Plaintiff asserts these pretexts lacked reasonable suspicion under *Heien v. North Carolina* (2014).

7. Escalation and Coercion: Defendants threatened Plaintiff with arrest, forcibly opened Plaintiff's car door, and ignored repeated requests for a supervisor.

8. Unlawful Seizure: Defendant Turner blockaded Plaintiff's vehicle, extending detention without probable cause (*Rodriguez v. United States*, 2015).

9. Excessive Force/Unlawful Removal: Defendants forcibly removed Plaintiff from the vehicle without justification, violating the Fourth Amendment (*Graham v. Connor*, 1989).

10. Unlawful Search: Defendant searched Plaintiff's vehicle and trunk for 20 minutes without consent, warrant, or probable cause (*Arizona v. Gant*, 2009). Destruction of property (ripped carpet) constitutes an additional Fourth Amendment violation by Officer Ponce. (*U.S. v. Ramirez*, 1998).

11. Retaliation for Recording: Seizure of Plaintiff's phone during recording violates the First Amendment (*Fields v. City of Philadelphia*, 2021).

12. Failure to Intervene: Sergeant Campos and other officers failed to stop constitutional violations  (*Sanchez v. Dart*, 2016).

13. State Law Claim: [Battery] (unconsented physical contact), intentional infliction of emotional distress, and property damage.

14. Unconstitutional Stop: Illinois State statute does not explicitly prohibit windshield placement. Therefore, Officer Ponce failed to obtain probable cause before violating Plaintiff. (Heien v. North Carolina (2014)) permits stops only for "objectively reasonable" mistakes of law. Officer Ponce lacked basis for Initial stop and further violated Plaintiffs rights.

15. Pretextual Stop: Officer Ponce's additional reason for the unlawful stop regarding "illegal tint" lacks sufficient credibility; due to officers Ponce failure to use a Calibrated tint meter to prove ilegality, despite making a subjective visual assessment. This also constitutes a 4th Amendment violation for prolonged detention and removal from personal property, without consent, nor probable cause; or suspicion of a crime being committed.
(State v. Slowikowski, Ohio 2003)

16. Defendants initiated a pre textual stop and failed to meet the Standard of reasonable suspicion.  (Terry v. Ohio (1968)

17. All Defendant officers forcibly removed the Plaintiff from the liberty of his property and his freedom, without articulable danger. Prior to forcibly removing Plaintiff, officer Ponce threatened removal and arrest before assessing Safety risks, while no evidence suggested Plaintiff was armed or dangerous. Officer Ponce, Turner, Sanchez, and Sgt. Campos eagerness to violate, while displaying aggression and failing to De-escalate, negates the Defendants "Safety" justifications, often used to furthermore deceptively violate the community.
(U.S. v. Weaver, 9th Circuit. 2016)

18. Defendant Officers forceful removal violates the 4th amendment due to its punitive, and non-precautionary nature.

19. Defendant Officers initiated an unlawful traffic stop that lasted longer than it needed to address the Defendants alleged infraction. In result, Plaintiff, along with his passenger endured almost a hour of harassment, and deprivation of rights. Subsequently, Sgt. Campos arrived and unconstitutionally extended the stop.

20. Defendant officers lacked reasonable suspicion of criminal activity to justify the prolonged detention the Plaintiff endured The prolonged detention was De facto Arrest without probable cause. The Defendants actions have caused the Plaintiff mental, and emotional anguish, not excluding damages that remain.

21. Defendants imposed a traffic stops in which involved a "Fishing Expedition" unrelated to a crime; in which is prohibited in Illinois.
   (Illinois v. Caballes (2005))

22. Sergeant Campos ordered and/or allowed "general rummaging", in which is  an unlawful search forbidden via  (Arizona v. Gant (2009)

23. In result of Sergeant Campos ordering the Plaintiff to exit the vehicle, this allowed officer Ponce to further deprive the Plaintiff, by ripping his carpeting and flooring in his vehicle, constitutes "Destruction of Property". Which is considered unreasonable under the 4th Amendment.
(U.S. v. Ramirez, 1998)

24. Plaintiff explicitly denied consent to all search and seizures, however, Officer Ponce and other Defendant officers deprived Plaintiff of the freedom and liberty to his estate, and personal property; not excluding damaging Plaintiffs property.

25. Officer Ponce at the orders of Sgt. Campos issued Blank and/or ineligible tickets/citations that failed to specify an offense.

26. RETALITORY EVIDENCE OF BAD FAITH: After violating The Plaintiffs rights, and unlawfully detaining him without probable cause, Officers/Defendants drove away laughing and smiling displaying punitive intent, and not a good faith enforcement effort. Proving to be an retaliatory act; in which violates (1st Amendment rights).  (Mackey v. Town of Allendale, 2021)

27. COMPOUNDING VIOLATIONS: Defendant officers unlawfully seized the Plaintiffs phone with prior knowledge he was recording the officers police activity, in which violated the Plaintiffs (1st Amendment) rights.
(Fields v. City of Philadelphia, 2021)

28. 14th AMENDMENT VIOLATION: Defendants handcuffed/detained the Plaintiff and his passenger for over 30 minutes, in wet and cold weather while they unlawfully searched and destructed the Plaintiffs property (Vehicle). This constitutes cruel and unusual punishment.

29. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS: Defendants threatened the Plaintiff that he was going to jail several times during the stop. However, no arrest warranting offense had been committed, nor was any arrest able offense cited at the end of the stop. Instead Defendants damaged and/or allowed damage to my vehicle in spite of lacking a probable cause for arrest.

30. VIOLATION OF ILLINOIS BODY CAMERA LAWS:
(LAW ENFORCEMENT OFFICER-WORN BODY CAMERA ACT (50 ILCS 706/10-20)
Plaintiff requested the Body Camera and Squad car footage on March 20, 2023; in which triggered the Defendants duty to preserve it, However, Defendants failure to ever provide the footage violates both State law and Due Process.

(a)Officers/Defendants intentionally withheld body camera footage once The Plaintiff made the formal request in March of 2023.
(ACLU v.COOK COUNTY (N.D. III. 2020)

(b)Defendants/Officers failed to disclose exculpatory evidence.
(Brady v. Maryland (1963) (Smith v. City of Chicago, 2017)

(c)Plaintiffs is entitled to apply the "Spoliation Doctrine", if Defendants fail to provide the requested evidence, or the courts shall infer the destroyed evidence would have been unfavorable to the party that withheld it.
(Martin v. Keeley & Sons, Inc., III. 2015)

(d)As to a Jury can be held to assume the footage showed the Defendants misconduct and bad faith if the Chicago Police dept., 22nd District continue to withhold it.

31. Plaintiff asserts that the requested footage will show Officer Ponce:
-ripping and/or destructing the interior of Plaintiffs vehicle,
-It will also prove the pretextual nature of the unlawful stop.
-It will prove lack of Probale cause for the Defendants unlawful stop.
-It will allow the courts to see and hear the laughing, mockery and cruel nature of the stop.


32. Plaintiff asserts that COPA initiated a impartial investigation, and that their "No Violation" Finding lacks credibility because they refused to release footage that was central to the Plaintiffs investigation rights, and Due Process. Therefore COPA's Internal investigation shall be invalidated and disregarded, due to their lack of transparency. (Jones v. Chicago, 7th Cir. 2019)

33. Plaintiff asserts that any lack thereof, destruction of evidence, or altered evidence, after the Defendants having been given timely notice, shall be deemed an intentional act to Destroy evidence. (Spoliation)

34. Defendants refusal to produce body camera footage, despite plaintiffs early request, in addition to COPA's closed investigation, constitutes spoliation and bad faith. The footage would directly contradict COPA's "No Violation" conclusion and prove the Defendants unlawful search, seizure, property destruction, and retaliatory misconduct. Under Illinois State law and The principles of Due Process, Defendants actions warrant relief of duty, sanctions, and an adverse inference instruction.

**IV. EQUITY JURISPRUDENCE**

35. **Unclean Hands Doctrine**: Defendants' spoliation of bodycam footage, bad faith, and pretextual stop constitute "unclean hands," barring them from claiming qualified immunity or lawful justification (*Precision Instrument Co. v. Auto. Co.*, 1945).

36. **Injunctive Relief**: Equity demands court intervention to prevent future harm. Plaintiff Request an order for:
   - Mandating bodycam footage preservation.
   - Requiring de-escalation training for officers.
   - Banning pretextual stops without probable cause.

**V. COMMON LAW CLAIMS**

37. Trespass to Chattels: Officer Ponce destruction of my vehicle's interior (ripped carpet and console) is a common-law trespass.
(*Restatement (Second) of Torts § 217*).

38. Assault/Battery: Threatening removal. With physical contact, from the property I own title to, (assault) and unfastening my seatbelt against my will or consent.(Battery) (*Cohen v. Smith*, Ill. 1995).

39. Intentional Infliction of Emotional Distress (IIED): Officers' began to act out of spite, by mocking with laughter, and prolonging detention in harsh weather, all while knowing they lacked probable cause. This displays a reckless disregard for my safety, and meets the "extreme and outrageous" standard.(*Public Fin. Corp. v. Davis*, Ill. 1976).

## **VI. CLAIMS FOR RELIEF**

1. Count 1: Fourth Amendment Violations (Unlawful Stop, Prolonged Detention, Excessive Force, Unlawful Search).

2. Count 2: First Amendment Violation (Retaliation for Recording).

3. Count 3: Failure to Intervene (All Defendant Officers).

4. Count 4: Conspiracy to Deprive Civil Rights (42 U.S.C. § 1985).

5. Count 5: State Law Claims (Battery, Property Damage).

## **VII. PRAYER FOR RELIEF**

1. Compensatory Damages: Emotional distress, property damage.

2. Punitive Damages: For Defendants' malicious conduct (Smith v. Wade, 1983).

3. Injunctive Relief: Policy reforms

4. Attorneys' Fees: 42 U.S.C. § 1988.

5. Equitable Remedies:
- Acknowledge Plaintiffs Beneficiary standing, and as Co Trustee of trust RF 159 212 970 US Private Trust; governed under U.S. Constitution, Common Law, and  Equity Jurisprudence.
- Require the City to hold funds for victim compensation.
- Order or Subpoena defendants to produce body camera footage.

6. Common law Damage: Compensatory (Emotional Distress, vehicle repair costs)
                       Punitive (For Willful and Malicious conduct performed by Defendants)

7. Trial by Jury Demand.

## ** VIII. CONCLUSION **

40. The Defendants' actions on February 23, 2023, constitute a flagrant disregard for Plaintiff's constitutional rights, Illinois statutory law, and fundamental principles of equity and common law. The pretextual stop, premised on a misapplication of 625 ILCS 5/3-413, unlawfully escalated into a prolonged detention, coercive removal from the vehicle, and a warrantless, destructive search of Plaintiff's property—all without probable cause or consent. Defendants' refusal to produce bodycam footage, despite Plaintiff's formal request and COPA's closed investigation, underscores their bad faith and spoliation of critical evidence that would expose their misconduct.From the unlawful stop to the retaliatory cover-up—reflect a systemic abuse of power that trampled Plaintiff's constitutional, statutory, and common-law rights.lack thereof in this matter displays a deliberate effort to shield misconduct. Equity demands accountability, and the law compels redress.

Respectfully Submitted,


Dorsey, Cordarro T., (Beneficiary & Co-Trustee
RF 159 212 970 US)
Plaintiff - Sui Juris
ProtectTheYoungSouls@gmail.com
Date:  4-13-2025

## AFFADAVIT OF SERVICE

Please be advised  I have submitted a new Amended Complaint for case
25-cv-01212, Involving officer, Ponce, Turner, Sanchez, and Sgt.
Campos, and the City of Chicago, in The United States District Court
of Illinois Eastern Division on the following date:


I, Dorsey, Cordarro T., declare under penalty of perjury that the
foregoing is true and correct.




Respectfully Submitted,


Dorsey, Cordarro T., (Beneficiary & Co-Trustee
RF 159 212 970 US)
Plaintiff - Sui Juris
ProtectTheYoungSouls@gmail.com
Date: 4-20-2025

STATE OF ILLINOIS
County Of Cook
CITY OF CHICAGO

Star No. 11493

I, Carlos PONCE A _____ having been appointed to the
                Name (print)

Office of ___ POLICE OFFICER _____

Do solemnly swear that I will support the Constitution of the United States, and the
Constitution of the State of Illinois, and that I will faithfully discharge the duties of the
office of such, according to the best of my ability.

██████████████████

Signature

Witnessed by:                    ██████████████████

SGT. RAYMOND FIERRO ████        Address (print)

                                 02 JAN 2019

                                 Date

CPD-62.153 (Rev. 3/95)

STATE OF ILLINOIS

County Of Cook

CITY OF CHICAGO

Star No. 14203

I, TURNER, MARCUS _____ have been appointed to the

Office of _____ POLICE OFFICER _____

Do solemnly swear that I will support the Constitution of the United States, and the
Constitution of the State of Illinois, and that I will faithfully discharge the duties of the office of
such, according to the best of my ability.



Signature

Address (print)

06 JUN17 _____

Date

Witnessed by:



Jeffery Chapman

Sergeant, Operations & Recruit Training

Education and training Division

STATE OF ILLINOIS
County Of Cook
CITY OF CHICAGO

Star No. 11787

I, Anthony SANCHEZ _____ having been appointed to the
Name (print)

Office of _____ **POLICE OFFICER** _____

Do solemnly swear that I will support the Constitution of the United States, and the
Constitution of the State of Illinois, and that I will faithfully discharge the duties of the
office of such, according to the best of my ability.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Signature

Witnessed by:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Address (print)

Sgt. John Pardell ▮▮▮▮

06 FEB 2019
Date

CPD-62.153 (Rev. 3/95)

EXHIBITS 4

cpdp › Search › Carlos Ponce



Internal Allegations · Civilian Allegations · Use of Force Reports

# Carlos Ponce

30 years old, hispanic, male.

| | |
|---|---|
| Badge | 11493 |
| Rank | Police Officer |
| Unit | Unit 022 - District 022 |
| Career | JUN 25, 2018 — Present |

| **9** | **0** |
|---|---|
| Allegations | Sustained |
| More than 95% of other officers | 0 Disciplined |

| **5** | **$0** |
|---|---|
| Use of Force Reports | Total Lawsuit Settlements |
| More than 84% of other officers | |

**EXHIBITS 5**



0
Major Awards

0
Honorable Mentions
More than 0% of other officers

Timeline    Map    Coaccusals

All (15) ⌄

**2023**

F    **Use of Force Report**                                   SEP 4

C    **Illegal Search**                                        JUL 7
     Unknown,

**2022**

C    **False Arrest**                                          SEP 2
     Unknown,

C    **Operation/Personnel Violations**                       AUG 22
     Unknown,

C    **Illegal Search**                                       JUN 15
     Unknown,

**EXHIBITS 6**

| F | Use of Force Report | MAY 2 |

**2021**

| C | **Operation/Personnel Violations** | OCT 16 |
| | Unfounded, No Action Taken / Not Sustained / Exonerated / Unfounded | |

| C | **Operation/Personnel Violations** | AUG 14 |
| | Unfounded, No Action Taken / Not Sustained / Exonerated / Unfounded | |

| F | Use of Force Report | JUN 16 |

**2020**

| F | Use of Force Report | NOV 1 |

| C | **Operation/Personnel Violations** | JUN 18 |
| | No Affidavit, No Action Taken / Not Sustained / Exonerated / Unfounded | |

| C | **Operation/Personnel Violations** | JAN 31 |
| | No Affidavit, No Action Taken / No Affidavit | |

**2019**

Unit 044 → **Unit 022 - District 022**   DEC 12

| F | Use of Force Report | APR 15 |

EXHIBITS 7

| C | **Use Of Force**<br>Unknown, | APR 15 |

| A | 2019 Crime Reduction Award | JAN 1 |

**2018**

Joined CPD | JUN 25

Timeline    Map    Coaccusals

Legal    Github    Contact

**INVISIBLE INSTITUTE**

Marcus Turner

AS OF
**4/21/2025**



# Marcus Turner

| | |
|---|---|
| Year of Birth | **1986**<br>39 years old |
| Race | **Black** |
| Sex | **Male** |
| Badge | **14203** |
| Rank | **Police Officer**<br>$97,974 base salary |
| Unit | **District 022** |
| Career | **DEC 12, 2016 — Present** |

| **6** | **7** | **0** |
|---|---|---|
| Allegations | Use of Force Reports | Major Awards |
| More than 84% of other officers | More than 77% of other officers | |
| **0** | **$0** | **3** |
| Sustained | Total Lawsuit Settlements | Honorable Mentions |
| 0 Disciplined | | More than 68% of other officers |

## Notes

**Salary:** Salary data reflects base salary, but not *overtime* pay, which can make up a substantial amount of an officer's compensation. Salary data is provided by the City of Chicago Department of Human Resources.

**Allegations:** Percentiles are based on an officer's complaints per year of service in the CPD. This means that an officer with seven complaints in two years (3.5 per year) will have a higher percentile than another officer with 12 complaints in 12 years on the force (1 per year). We do not count years of service for periods in which we do not have complaint data. Officers with less than one year of service are also excluded.

**TRRs:** The use of force data found in Tactical Response Reports (TRRs) is self-reported by officers and likely does not reflect all force used by the department. A TRR documents the actions of an officer and civilian subject in an encounter where the officer used a substantial physical force or the civilian alleged that they were injured by the officer. CPD directives call for officers to assess the level of resistance that a person is displaying (ranging from not following officer commands to threatening an officer with deadly force) and to respond with an appropriate level of force. TRRs are reviewed and approved by CPD supervisors.

**Lawsuits and Settlements:** Settlement data is from 2011-2019 and was compiled by the staff of The Chicago Reporter.

**Sustained Complaints:** Due to limitations in the data systems used by the CPD and its oversight agencies, if any part of a complaint against an officer is marked as "sustained" then the entire allegation against that officer is also marked as "sustained." This means that if an officer receives a complaint alleging improper use of force, and illegal search, and incorrect paperwork, but only the paperwork violation is upheld, then the entire complaint is marked as "sustained."

**Major Awards:** Major Awards include only awards B-G from this list in the CPD Directives Special Order S01-01-01 "DESCRIPTION OF AND ELIGIBILITY FOR DEPARTMENT AWARDS."
Percentiles are based on an officer's major awards per year of service in the CPD. This means that an officer with seven major awards in two years (3.5 per year) will have a higher percentile than another officer with 12 major awards in 12 years on the force (1 per year). We do not count years of service for periods in which we do not have data. Officers with less than a year of service are also excluded.

**Honorable Mentions:** Percentiles are based on an officer's honorable mentions per year of service in the CPD. This means that an officer with seven honorable mentions in two years (3.5 per year) will have a higher percentile than another officer with 12 honorable mentions in 12 years on the force (1 per year). We do not count years of service for periods in which we do not have data. Officers with less than a year of service are also excluded.

## 2023

| | | |
|---|---|---|
| TRR 202302992 | **Use of Force Report** | AUG 18 |
| TRR 202301913 | **Use of Force Report** | JUN 12 |
| CR 20230001116 | **Illegal Search**<br>Unknown, | MAR 14 |
| CR 20230001174 | **Illegal Search**<br>Unknown, | MAR 14 |

## 2022

| | | |
|---|---|---|
| CR 20220003902 | **Illegal Search**<br>Administratively Closed, Administratively Closed | SEP 11 |
| TRR 202202328 | **Use of Force Report** | AUG 9 |
| TRR 202201054 | **Use of Force Report** | MAY 2 |

## 2021

| | | |
|---|---|---|
| TRR 202103460 | **Use of Force Report** | DEC 12 |
| CR 20210001904 | **Operation/Personnel Violations**<br>Exonerated, No Action Taken / Not Sustained / Exonerated / Unfounded | MAY 20 |

## 2020

| | | |
|---|---|---|
| CR 20220001646 | **Use Of Force**<br>Unfounded, No Action Taken / Not Sustained / Exonerated / Unfounded | JUL 24 |

## 2019

| | | |
|---|---|---|
| CR 20190004433 | **False Arrest**<br>Exonerated, No Action Taken / Not Sustained / Exonerated / Unfounded | OCT 3 |
| Award | **2019 Crime Reduction Award** | JAN 1 |

## 2018

| | | |
|---|---|---|
| UNIT CHANGE | Unit 044 - Recruit Training Section → Unit 022 - District 022 | |
| TRR 201801878 | **Use of Force Report** | MAY 27<br>MAY 26 |

## 2017

| | | |
|---|---|---|
| TRR 201700204 | **Use of Force Report** | OCT 31 |

## 2016

| | | |
|---|---|---|
| JOINED | **Joined Chicago Police Department with Unit 044 as a Police Officer** | DEC 12 |

**Notes**

Rank: Historic rank data is very imperfect.

Unit: This field provides the CPD unit an officer was assigned to at a given point in time. Officers are often detailed from their assigned unit to a second unit for periods of time ranging from a few days to months at a time. This means that an officer assigned to the Third District (Unit 003) might spend weeks outside of the district while detailed to the Narcotics Division (Unit 189).

**EXHIBITS 13**

## FINAL SUMMARY REPORT[1]

### I.  EXECUTIVE SUMMARY

On March 16, 2023, the Civilian Office of Police Accountability (COPA) received a notification of a news story covering misconduct allegations made by ███████████ against members of the Chicago Police Department (CPD). ███████ alleged that on March 14, 2023, various unidentified CPD members[2] forced entry into his home, searched his home, and failed to provide him notice of the search.[3] Following its investigation, COPA reached sustained findings regarding all allegations.

### II.  SUMMARY OF EVIDENCE[4]

On March 14, 2023, at 4:42 pm, a CPD license plate reader identified a grey 2020 Nissan at 142 W 95th St. that was stolen in a carjacking earlier that day.[5] A CPD helicopter was dispatched and followed the Nissan to the alleyway west of the ████ block of ███████.[6] The Nissan was driving south in the alley and stopped.[7] An unidentified man exited the Nissan from the front driver's side door.[8] He began running south in the alley and turned to run through the yard and gangway of ██54 ██████.[9] The man ran south through the front yards of ██54 and then ██56 S ██████.[10] He turned onto ████ █. and ran on the sidewalk to the rear of ██56 ███████.[11] The CPD helicopter lost its view of the man as he was entering the backyard of ██56 ███████ at approximately 4:58 pm.[12]

---

[1] Appendix A includes case identifiers such as the date, time, and location of the incident, the involved parties and their demographics, and the applicable rules and policies.

[2] The CPD members were subsequently identified by COPA as Commander Brian Kinnane, Sergeants James Bailey and Michael Brown, and Police Officers Alex Coan, Anthony Sanchez, Marcus Turner, and Luis Nunez.

[3] One or more of these allegations fall within COPA's jurisdiction pursuant to Chicago Municipal Code § 2-78-120. Therefore, COPA determined it would be the primary investigative agency in this matter.

[4] The following is a summary of what COPA finds most likely occurred during this incident. This summary utilized information from several different sources, including BWC video, police helicopter video, third-party video, police reports, civilian interviews, and officer interviews.

[5] Att. 15.

[6] Att. 1 at 1:17 to 1:40.

[7] Att. 1 at 1:40 to 1:52.

[8] Att. 1 at 1:54.

[9] Att. 1 at 1:55 to 2:04

[10] Att. 1 at 2:05 to 2:10

[11] Att. 1 at 2:10 to 2:14.

[12] Att. 1 at 2:14 to 2:31.

Log # 2023-1116



Figure 1 shows the path of the unidentified male took from the location where (A) he exited the grey Nissan to (B) where the CPD helicopter last viewed him.

Within one minute, CPD officers arrived at the location and began searching unsecured yards and garages along the alley west of ██████. north and south of ██-█. as additional officers responded and joined in the search.[13] While searching, Sergeant James Bailey encountered a civilian outside of a garage in the alleyway west of the ███████████████. The civilian said that he saw the Nissan drive past him in the alleyway and that the driver exited, continued running south and then turned into the yard of ██54 ██████.[14]

After trying the rear and side door of ██54 ██████. and finding it secured, Sgt. Bailey knocked on the door to ██56 ██████. and spoke with the resident, who reported that no one had recently entered the house.[15] Sgt. Bailey proceeded to ██54 ██████ and knocked at the front window without a response.[16] He went around to the side of the house with Officer Turner and knocked at and tried to open the side door, which was locked.[17] Sgt. Bailey raised the screen to a

---

[13] Att. 1 at 2:33 to 3:00; Att. 7 at 4:44 to 8:41; Att. 10 at 2:11 to 4:29; Att. 14 at 2:33 to 8:31; Att. 25 at 0:00 to 12:33; Att. 28 at 0:00 to 3:22; Att. 55 at 1:58 to 13:28; Att. 86 at 0:00 to 4:49; Att. 87 at 0:00 to 15:21; Att. 88 at 2:01 to 18:05; Att. 89 at 1:26 to 17:42.
[14] Att. 7 at 8:56 to 10:01 and Att. 10 at 4:32 to 5:18.
[15] Att. 7 at 10:06 to 17:11
[16] Att. 7 at 17:43 to 18:47.
[17] Att. 7 at 18:45 to 19:20 and Att. 29 at 1:36 to 2:21.

window adjacent to the side door, and Officer Turner then opened the window, which was unlocked.[18] Officer Turner announced his office and called out without a response.[19] He then reached through the window and unlocked the side door.[20] Sgt. Bailey opened the door and entered the house followed by Officers Turner, Sanchez, Coan, Nunez, and Sgt. Brown.[21] The officers began searching the house and were joined by Commander Kinnane a short time later. The officers searched the entirety of the house, locating no occupants.[22] Sgt. Bailey closed the window and locked the door used to enter the house as the officers departed.[23]

## III.   ALLEGATIONS

**Commander Brian Kinnane, Sergeants Michael Brown and James Bailey, and Police Officers Alex Coan, Anthony Sanchez, Marcus Turner, and Luis Nunez:**

1. Entered the residence of ███████████ at ██54 ██████████, without justification.
   - Sustained, Violation of Rules 2 and 3
2. Searched the residence of ███████████ at ██54 ██████████, without justification.
   - Sustained, Violation of Rules 2 and 3
3. Failed to give notification to the complainant that CPD members entered and/or searched the residence of ███████████ at ██54 ██████████.
   - Sustained, Violation of Rules 2, 3, 10, 21, and 22.

## IV.   CREDIBILITY ASSESSMENT

This investigation did not reveal any evidence that caused COPA to question the credibility of any of the individuals (sworn or unsworn) who provided statements.

## V.   ANALYSIS[24]

   a.   Entry and Search of ████████████ Residence

In a statement to COPA investigators, ██████ complained that CPD members entered and searched his home without justification.[25] After its investigation, COPA finds that these allegations are **Sustained**.

---

[18] Att. 7 at 19:36 to 19:53, Att. 29 at 2:25 to 2:46, and Att. 14 at 12:16 to 12:26.
[19] Att. 7 at 19:58 to 20:21 and Att. 29 at 2:48 to 3:08.
[20] Att. 7 at 20:22 to 20:43 and Att. 29 at 3:09 to 3:32.
[21] Att. 7 at 20:44 to 20:56, Att. 25 at 15:23 to 15:32, Att. 28 at 6:38 to 6:58, Att. 29 at 3:33 to 3:46, Att. 30 at 1:59 to 2:10, and Att. 31 at 1:13 to 1:23.
[22] Att. 7 at 20:57 to 23:01, Att. 14 at 14:03 to 16:15, Att. 25 at 15:33 to 17:43, Att. 28 at 6:59 to 8:15, Att. 29 at 3:47 to 6:18, Att. 30 at 2:11 to 4:37, and Att. 31 at 1:24 to 3:31.
[23] Att. 7 at 23:02 to 23:38. In his statement to COPA investigators, █████ alleged that his door and window were left unlocked. Att. 11 at 3:18. Sgt. Bailey's BWC video shows that he left the window as the officers found it and locked the door to ████████home prior to leaving.
[24] For a definition of COPA's findings and standards of proof, *see* Appendix B.
[25] Att. 11 at 2:46 to 3:11.

Log # 2023-1116

Unless a defined exception applies, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment."[26] Defined exceptions "are jealously and carefully drawn"[27] and include exigent circumstances where police are engaged in hot pursuit of a suspect.[28] Officers making a warrantless entry into a home pursuant to the hot pursuit doctrine must be engaged in an immediate and continuous pursuit.[29]

At the time the accused officers made entry into ▮▮▮▮ home, they had no actual knowledge that the subject they were pursuing had entered the home. They had received information from a civilian witness, who saw the subject run into ▮▮▮▮ yard,[30] and from the police helicopter, which saw the subject run into ▮▮▮▮ yard and continue past ▮▮▮▮ home before losing sight of him.[31] The officers entered ▮▮▮▮ home based on this information placing the subject in the vicinity of ▮▮▮▮ house and speculation that he may have found a mode to enter the home.[32] While these circumstances do constitute an immediate pursuit of the unidentified suspect, the pursuit was no longer continuous after the officers no longer had actual knowledge of the unidentified man's whereabouts. Because the officers entered the home without a search warrant and no search warrant exception applied to the entry and search, Allegations #1, that the officers entered the residence of and #2 against the accused officers are **Sustained**.

      b.   Failure to Notify ▮▮▮▮ of the Entry and Search of his Residence.

▮▮▮▮ complained in his statement to COPA investigators that CPD members failed to provide him with a notification that they had entered and searched his home.[33] After its investigation, COPA finds that this allegation is **Sustained**.

CPD policy enshrines a commitment to Procedural Justice and Legitimacy.[34] In all interactions with the community, CPD members are directed to practice the four central principles of Procedural Justice and Legitimacy, which are giving others a voice, neutrality in decision making, respectful treatment, and trustworthiness.[35]

Following the incident, the involved officers made no attempts to identify ▮▮▮▮ as the owner of the home that they searched or to notify him that the search occurred and the officers' basis for conducting the search. Further, the officers failed to document that the search occurred

---

[26] Katz v. United States, 389 U.S. 347 at 357 (1967).
[27] Jones v. United States, 357 U.S. 493 at 499 (1958).
[28] United States v. Santana, 427 U.S. 38 at 42 (1976).
[29] Welsh v. Wisconsin, 466 U.S. 740 at 753 (1984).
[30] Att. 7 at 8:56 to 10:01 and Att. 10 at 4:32 to 5:18.
[31] Att. 1 at 1:56 to 2:14.
[32] Att. 64 at pg. 23, lns. 16 to 24; Att. 71 at pg. 12, ln. 16 to pg. 13, ln. 15; Att. 93 at pg. 14, lns. 9 to 22.
[33] Att. 11 at 3:04 to 3:24.
[34] Att. 96, G02-01(II)(E)(1) Protection of Human Rights (effective June 30, 2022, to present).
[35] Att. 96, G02-01(II)(E)(1) and (3).

Log # 2023-1116

in any reports until Commander Kinnane completed a supplemental report on March 18, 2023,[36] which was after the incident was reported in the news[37] and this investigation was initiated.[38]

These failures violate CPD's commitment to Procedural Justice and Legitimacy specifically as they relate to respectful treatment of community members and trustworthiness. The accused officers showed a disrespect for ████ rights by failing to notify him of their intrusion into his home and diminished community trust by failing to communicate the basis for their entry to ████ or complete any report documenting the search only after the incident attracted public attention. COPA finds that Allegation #3 against the accused officers is **Sustained**.

## VI. DISCIPLINARY RECOMMENDATION

### a. Commander Brian Kinnane

#### i. Complimentary and Disciplinary History[39]

Commander Kinnane has received 100 various awards and has no disciplinary or spar history for the past five years.

#### ii. Recommended Discipline

COPA has found that Commander Kinnane violated Rules 2, 3, 10, 21 and 22, when he entered and searched the residence of ████████ as well as failing to notify ████ that officers entered and searched his residence. Although Commander Kinnane provided his perspective and justification regarding the allegations, he was the Commanding officer on scene, with the accompanying officers under his direction. It is Commander Kinnane's responsibility to properly direct any officers under his watch with the appropriate execution of CPD policy, as well the policies implementation to clearly effectuate CPD's goals within the communities they serve. BWC footage and Commander Kinnane's interview show that the misconduct was without malice considering the mitigating factors of a fleeing carjacker that potentially entered the home of unsuspecting civilians. It is for these reasons, combined with Commander Kinnane's rank, complimentary history, and lack of disciplinary history, that COPA recommends a 3-day suspension.

### b. Sergeant James Bailey

#### i. Complimentary and Disciplinary History[40]

---

[36] Att. 42.
[37] Att. 18.
[38] Att. 74.
[39] Att. 105
[40] Att. 104

Sergeant Bailey has received 198 various awards, one sustained disciplinary complaint in 2019 for arrest/lockup incidents escape in which he received a reprimand and no spar history.

### ii.   Recommended Discipline

COPA has found that Sergeant Bailey violated Rules 2, 3, 10, 21 and 22, when he entered and searched the residence of ███████ as well as failing to notify ████ that officers entered and searched his residence. Although Sergeant Bailey provided his perspective and justification regarding the allegations, he was a supervising officer on scene, with accompanying officers under his direction. It is Sergeant Bailey's responsibility to properly direct any officers under his watch with the appropriate execution of CPD policy, as well the policies implementation to clearly effectuate CPD's goals within the communities they serve. BWC footage and Sergeant Bailey's interview show that the misconduct was without malice considering the mitigating factors of a fleeing carjacker that potentially entered the home of unsuspecting civilians. It is for these reasons, combined with Sergeant Bailey's rank, complimentary history, and lack of disciplinary history, that COPA recommends a 3-day suspension.

### c.   Sergeant Michael Brown

### i.   Complimentary and Disciplinary History[41]

Sergeant Brown has received 72 various awards and one spar in 2024 for Current license plates and/or city vehicle sticker with no disciplinary action taken. He has not had a sustained disciplinary history in the past five years.

### ii.   Recommended Discipline

COPA has found that Sergeant Brown violated Rules 2, 3, 10, 21 and 22, when he entered and searched the residence of ███████ as well as failing to notify ████ that officers entered and searched his reside. Although Sergeant Brown provided his perspective and justification regarding the allegations, he was a supervising officer on scene, with accompanying officers under his direction. It is Sergeant Brown's responsibility to properly direct any officers under his watch with the appropriate execution of CPD policy, as well the policies implementation to clearly effectuate CPD's goals within the communities they serve. BWC footage and Sergeant Brown's interview show that the misconduct was without malice considering the mitigating factors of a fleeing carjacker that potentially entered the home of unsuspecting civilians. It is for these reasons, combined with Sergeant Brown's rank, complimentary history, and lack of disciplinary history, that COPA recommends a 3-day suspension.

---

[41] Att.101

### d. Officer Alex Coan

#### i. Complimentary and Disciplinary History[42]

Officer Coan has received 121 various awards and no sustained disciplinary history for the past five years. He has six spars: three in 2024, two for preventable accident and one for neglect of duty in which he received reprimands; two in 2023 both for court appearance violations in which he received a reprimand and 1-day off and one in 2022 for preventable accident in which he received a reprimand.

#### ii. Recommended Discipline

COPA has found that Officer Coan violated Rules 2, 3, 10, 21 and 22, when he entered and searched the residence of ███████ as well as failing to notify ████ that officers entered and searched his residence. Officer Coan was performing under the tutelage and direction of Commander Kinnane and Sergeant's Bailey and Brown. BWC footage and Officer Coan's interview show that the misconduct was without malice considering the mitigating factors of a fleeing carjacker that potentially entered the home of unsuspecting civilians. It is for these reasons, combined with Officer Coan's rank, complimentary and disciplinary history, that COPA recommends a 1-day suspension and additional applicable training.

### e. Officer Anthony Sanchez

#### i. Complimentary and Disciplinary History[43]

Officer Sanchez has received 23 various awards and one spar in 2023 for preventable accident in which he received a reprimand. He has not had any sustained disciplinary history in the past five years.

#### ii. Recommended Discipline

COPA has found that Officer Sanchez violated Rules 2, 3, 10, 21 and 22, when he entered and searched the residence of ███████ as well as failing to notify ████ that officers entered and searched his residence. Officer Sanchez was performing under the tutelage and direction of Commander Kinnane and Sergeant's Bailey and Brown. BWC footage and Officer Sanchez's interview show that the misconduct was without malice considering the mitigating factors of a fleeing carjacker that potentially entered the home of unsuspecting civilians. It is for these reasons, combined with Officer Sanchez's rank, complimentary and disciplinary history, that COPA recommends a 1-day suspension and additional applicable training.

---

[42] Att. 106
[43] Att. 103

Log # 2023-1116

#### f. Officer Marcus Turner

##### i. Complimentary and Disciplinary History[44]

Officer Turner has received 35 various awards and one spar in 2024 for BWC violation in which he received a reprimand. He has not had a sustained disciplinary history in the past five years.

##### ii. Recommended Discipline

COPA has found that Officer Turner violated Rules 2, 3, 10, 21 and 22, when he entered and searched the residence of █████████ as well as failing to notify █████ that officers entered and searched his residence. Officer Turner was performing under the tutelage and direction of Commander Kinnane and Sergeant's Bailey and Brown. BWC footage and Officer Turner's interview show that the misconduct was without malice considering the mitigating factors of a fleeing carjacker that potentially entered the home of unsuspecting civilians. It is for these reasons, combined with Officer Turner's rank, complimentary and disciplinary history, that COPA recommends a 1-day suspension and additional applicable training.

#### g. Officer Luis Nunez

##### i. Complimentary and Disciplinary History[45]

Officer Nunez has received 54 various awards and one spar in 2023 for preventable accident in which he received a reprimand. Officer Nunez has no sustained disciplinary history for the past five years.

##### ii. Recommended Discipline

COPA has found that Officer Nunez violated Rules 2, 3, 10, 21 and 22, when he entered and searched the residence of █████████ as well as failing to notify █████ that officers entered and searched his residence. Officer Nunez was performing under the tutelage and direction of Commander Kinnane and Sergeant's Bailey and Brown. BWC footage and Officer Nunez's interview show that the misconduct was without malice considering the mitigating factors of a fleeing carjacker that potentially entered the home of unsuspecting civilians. It is for these reasons, combined with Officer Turner's rank, complimentary and disciplinary history, that COPA recommends a 1-day suspension and additional applicable training.

Approved:

---

[44] Att. 100
[45] Att. 102

Log # 2023-1116

6/21/2024

_____      _____

*Matthew Haynam*                                        Date

*Deputy Chief Administrator – Chief Investigator*

Log # 2023-1116

## Appendix A

**Case Details**

| Date/Time/Location of Incident: | March 14, 2023 / 5:10 pm / ■54 ■■■■■■, Chicago, IL |
| --- | --- |
| Date/Time of COPA Notification: | March 16, 2023 / 5:18 pm |
| Involved Member #1: | Commander Brian Kinnane, Star #576, Employee ID ■■■■, Date of Appointment: April 30, 2001, Unit: 022, Male, White |
| Involved Member #2: | Sergeant James Bailey, Star #1966, Employee ID #■■■, Date of Appointment: May 2, 1994, Unit: 004/022, Male, White |
| Involved Member #3: | Sergeant Michael Brown, Star #1910, Employee ID #■■, Date of Appointment: April 29, 2002, Unit: 022, Male, Black |
| Involved Member #4: | Police Officer Alex Coan, Star #12710, Employee ID #■■■, Date of Appointment: July 2, 2012, Unit: 022, Male, White |
| Involved Member #5: | Police Officer Anthony Sanchez, Star #11387, Employee ID #■■■■, Date of Appointment: July 27, 2018, Unit: 022, Male, Hispanic |
| Involved Member #6: | Police Officer Marcus Turner, Star #14203, Employee ID #■■■, Date of Appointment: December 12, 2016, Unit: 022, Male, Black |
| Involved Member #7: | Police Officer Luis Nunez, Star #18229, Employee ID #■■■, Date of Appointment: July 27, 2018, Unit: 022, Male, Hispanic |
| Involved Individual #1: | ■■■■■■Male, Black |

**Applicable Rules**

- ☒ **Rule 2:** Any action or conduct which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department.
- ☒ **Rule 3:** Any failure to promote the Department's efforts to implement its policy or accomplish its goals.
- ☐ **Rule 5:** Failure to perform any duty.
- ☐ **Rule 6:** Disobedience of an order or directive, whether written or oral.
- ☐ **Rule 8:** Disrespect to or maltreatment of any person, while on or off duty.
- ☐ **Rule 9:** Engaging in any unjustified verbal or physical altercation with any person, while on or off duty.
- ☒ **Rule 10:** Inattention to duty.
- ☐ **Rule 14:** Making a false report, written or oral.
- ☐ **Rule 38:** Unlawful or unnecessary use or display of a weapon.

Log # 2023-1116

☒ **Rule 21:** Failure to report promptly to the Department any information concerning any crime or other unlawful action.

☒ **Rule 22:** Failure to report to the Department any violation of Rules and Regulations or any other improper conduct which is contrary to the policy, orders, or directives of the Department.

## Applicable Policies and Laws

- G02-01: Protection of Human Rights (effective June 30, 2022, to present)
- 4th Amendment to U.S. Constitution

## Appendix B

### Definition of COPA's Findings and Standards of Proof

For each Allegation, COPA must make one of the following findings:

1. <u>Sustained</u> – where it is determined the allegation is supported by a preponderance of the evidence;

2. <u>Not Sustained</u> – where it is determined there is insufficient evidence to prove the allegations by a preponderance of the evidence;

3. <u>Unfounded</u> – where it is determined by clear and convincing evidence that an allegation is false or not factual; or

4. <u>Exonerated</u> – where it is determined by clear and convincing evidence that the conduct described in the allegation occurred, but it is lawful and proper.

A **preponderance of evidence** can be described as evidence indicating that it is **more likely than not** that a proposition is proved.[46] For example, if the evidence gathered in an investigation establishes that it is more likely that the conduct complied with CPD policy than that it did not, even if by a narrow margin, then the preponderance of the evidence standard is met.

**Clear and convincing evidence** is a higher standard than a preponderance of the evidence but lower than the "beyond-a-reasonable doubt" standard required to convict a person of a criminal offense. Clear and convincing can be defined as a "degree of proof, which, considering all the evidence in the case, produces the firm and abiding belief that it is highly probable that the proposition . . . is true."[47]

---

[46] *See Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 191 (2005) (a proposition is proved by a preponderance of the evidence when it is found to be more probably true than not).

[47] *People v. Coan*, 2016 IL App (2d) 151036, ¶ 28 (quoting Illinois Pattern Jury Instructions, Criminal, No. 4.19 (4th ed. 2000)).

Log # 2023-1116

## **Appendix C**

### **Transparency and Publication Categories**

Check all that apply:

- ☐ Abuse of Authority
- ☐ Body Worn Camera Violation
- ☐ Coercion
- ☐ Death or Serious Bodily Injury in Custody
- ☐ Domestic Violence
- ☐ Excessive Force
- ☐ Failure to Report Misconduct
- ☐ False Statement
- ☐ Firearm Discharge
- ☐ Firearm Discharge – Animal
- ☐ Firearm Discharge – Suicide
- ☐ Firearm Discharge – Unintentional
- ☐ First Amendment
- ☒ Improper Search and Seizure – Fourth Amendment Violation
- ☐ Incidents in Lockup
- ☐ Motor Vehicle Incidents
- ☐ OC Spray Discharge
- ☐ Search Warrants
- ☐ Sexual Misconduct
- ☐ Taser Discharge
- ☐ Unlawful Denial of Access to Counsel
- ☐ Unnecessary Display of a Weapon
- ☐ Use of Deadly Force – other
- ☐ Verbal Abuse
- ☐ Other Investigation

Page 13 of 13

**EXHIBITS 26**



# Administrative Summary Report

## Log No: 2022-0001187

This ASR provides crucial information to reporting parties, accused members and accused members' supervisors. The information contained herein is intended to display Department member's accountability and foster the relationship with members of the public by ensuring legitimacy and community confidence. The following are definitions of recommended findings:

- **Sustained** - where it is determined that the allegation is supported by the evidence;
- **Not Sustained** - where it is determined that there is insufficient evidence to prove the allegations;
- **Unfounded** - where it is determined by that an allegation is false or not factual; or
- **Exonerated** - where it is determined that the conduct described in the allegation occurred, but it is lawful and proper.

## INCIDENT DESCRIPTION

On 14-15 Mar 22 from 2035-0051hrs, at the location of 1900 W Monterey, the Reporting Party of this Log Number investigation alleges that the involved Department Members towed his vehicle for no reason and failed to inventory the personal property contained in the vehicle.

**LOCATION OF OCCURRENCE:**  1900 W MONTEREY AVE , District 022

**ADDITIONAL LOCATION:**  87█ S WOOD ST , District 022

**DATE & TIME OF INCIDENT:**  14 Mar 2022 - 15 Mar 2022, 20:35 to 00:51

## NARRATIVE SUMMARY:

The Investigator gathered available evidence as listed.  Based on their respective findings, this log number investigation has been concluded with the recommendations listed.  Evidence was evaluated and considered by the investigator to reach their findings.

- Body Worn Camera video was available and reviewed.
- Police Observational Device (POD) video was available and reviewed.
- PCAD records, which document a unit's 911 dispatch history, were identified and reviewed.
- Various CPD reports or other documents related to this incident were available and analyzed.
- The complainant or Reporting Party cooperated in the investigation and provided information.
- The accused party or parties were interviewed.
- The accused member's complimentary and disciplinary histories were taken into consideration when determining the appropriate discipline for sustained allegations.

*(Listed above are items for which the investigator has indicated as having been obtained and relevant to the investigation.  This list is not inclusive of all items.  For item list, please see Placeholder narrative text box below for more information.)

## INVESTIGATIVE CONCLUSION:

Based on the statements of the involved parties and the gathered evidence in this log investigation, the undersigned finds that the following allegation(s) are SUSTAINED. Based on the SUSTAINED finding(s) and after taking into consideration the accused member's complimentary and disciplinary histories, the undersigned recommends that the following action be taken:

**Accused:**  JOSEALEJANDRO PICKETT
**Rank:**  POLICE OFFICER
**Star Number:**  13142

**RECOMMENDED PENALTY:**  600 - NO ACTION TAKEN / NOT SUSTAINED / EXONERATED / UNFOUNDED

### Allegations



# Administrative Summary Report

## Log No: 2022-0001187

### 1 - Unfounded - Operation/Personnel Violations/Neglect of Duty

**Allegation:** It is alleged by Reporting Party █████████ that between the dates 14 Mar 22 and 15 Mar 22, between 2035-0051hrs, at 1900 W Monterey, Chicago, IL 60643, the Accused Police Officer Josealejandro PICKETT #13142 had █████████ vehicle towed for no reason.

### 2 - Not Sustained - Arrest/Lockup Incidents/Prisoner's Property

**Allegation:** It is alleged by Reporting Party █████████ that between the dates 14 Mar 22 and 15 Mar 22, between 2035-0051hrs, at 1900 W Monterey, Chicago, IL 60643, the Accused Police Officer Josealejandro PICKETT #13142 failed to inventory clothes, a vehicle battery charger, and Covid testing equipment located in ████████ █████ vehicle prior to it being towed.

| | |
|---|---|
| **Accused:** | DANNY PAPADATOS |
| **Rank:** | POLICE OFFICER |
| **Star Number:** | 5082 |

**RECOMMENDED PENALTY:**     000 - VIOLATION NOTED

### Allegations

#### 1 - Unfounded - Operation/Personnel Violations/Neglect of Duty

**Allegation:** It is alleged by Reporting Party █████████ that between the dates 14 Mar 22 and 15 Mar 22, between 2035-0051hrs, at 1900 W Monterey, Chicago, IL 60643, the Accused Police Officer Danny PAPADATOS #5082 had █████████ vehicle towed for no reason.

#### 2 - Sustained - Arrest/Lockup Incidents/Prisoner's Property

**Allegation:** It is alleged by Reporting Party █████████ that between the dates 14 Mar 22 and 15 Mar 22, between 2035-0051hrs, at 1900 W Monterey, Chicago, IL 60643, the Accused Police Officer Danny PAPADATOS #5082 failed to inventory clothes, a vehicle battery charger, and Covid testing equipment located in █████████ vehicle prior to it being towed.

**Rule Violation:** 05 - Failure to perform any duty. - It has been determined that between the dates 14 Mar 22 and 15 Mar 22, between 2035-0051hrs, at 1900 W Monterey, Chicago, IL Accused Police Officer PAPADATOS violated Department Rule No. 5: Failure to perform any duty when he failed to inventory the personal property contained in the vehicle of ████████ prior to having the vehicle towed in violation of General Order G07-03 Vehicle Towing And Relocation Operations Section IV-A-7.  [1 count(s)]

## Administrative Summary Report

### Log No: 2022-0001187

**Rule Violation:** 06 - Disobedience of an order or directive, whether written or oral. - It has been determined that between the dates 14 Mar 22 and 15 Mar 22, between 2035-0051hrs, at 1900 W Monterey, Chicago, IL Accused Police Officer PAPADATOS violated Department Rule No. 06: Disobedience of an order or directive, whether written or oral when he failed to inventory the personal property contained in the vehicle of ▮▮▮▮▮▮▮ prior to having the vehicle towed in violation of General Order G07-03 Vehicle Towing And Relocation Operations Section IV-A-7.  [1 count(s)]

**Rule Violation:** 10 - Inattention to duty. - It has been determined that between the dates 14 Mar 22 and 15 Mar 22, between 2035-0051hrs, at 1900 W Monterey, Chicago, IL Accused Police Officer PAPADATOS violated Department Rule No. 10: Inattention to duty when he failed to inventory the personal property contained in the vehicle of ▮▮▮▮▮▮ prior to having the vehicle towed in violation of General Order G07-03 Vehicle Towing And Relocation Operations Section IV-A-7.  [1 count(s)]

**Accused:** CARLOS PONCE
**Rank:** POLICE OFFICER
**Star Number:** 11493

**RECOMMENDED PENALTY:** 000 - VIOLATION NOTED

### Allegations

#### 1 - Unfounded - Operation/Personnel Violations/Neglect of Duty

**Allegation:** It is alleged by Reporting Party ▮▮▮▮▮▮ that between the dates 14 Mar 22 and 15 Mar 22, between 2035-0051hrs, at 1900 W Monterey, Chicago, IL 60643, the Accused Police Officer Carlos PONCE #11493 had ▮▮▮▮▮▮ vehicle towed for no reason.

#### 2 - Sustained - Arrest/Lockup Incidents/Prisoner's Property

**Allegation:** It is alleged by Reporting Party ▮▮▮▮▮▮ that between the dates 14 Mar 22 and 15 Mar 22, between 2035-0051hrs, at 1900 W Monterey, Chicago, IL 60643, the Accused Police Officer Carlos PONCE #11493 failed to inventory clothes, a vehicle battery charger, and Covid testing equipment located in ▮▮▮▮▮▮ vehicle prior to it being towed.

**Rule Violation:** 05 - Failure to perform any duty. - It has been determined that between the dates 14 Mar 22 and 15 Mar 22, between 2035-0051hrs, at 1900 W Monterey, Chicago, IL Accused Police Officer PONCE violated Department Rule No. 5: Failure to perform any duty when he failed to inventory the personal property contained in the vehicle of ▮▮▮▮▮▮ prior to having the vehicle towed in violation of General Order G07-03 Vehicle Towing And Relocation Operations Section IV-A-7. [1 count(s)]



## Administrative Summary Report

### Log No: 2022-0001187

**Rule Violation:** 06 - Disobedience of an order or directive, whether written or oral. - It has been determined that between the dates 14 Mar 22 and 15 Mar 22, between 2035-0051hrs, at 1900 W Monterey, Chicago, IL Accused Police Officer PONCE violated Department Rule No. 06: Disobedience of an order or directive, whether written or oral when he failed to inventory the personal property contained in the vehicle of ████████ prior to having the vehicle towed in violation of General Order G07-03 Vehicle Towing And Relocation Operations Section IV-A-7. [1 count(s)]

**Rule Violation:** 10 - Inattention to duty. - It has been determined that between the dates 14 Mar 22 and 15 Mar 22, between 2035-0051hrs, at 1900 W Monterey, Chicago, IL Accused Police Officer PONCE violated Department Rule No. 10: Inattention to duty when he failed to inventory the personal property contained in the vehicle of ████████ prior to having the vehicle towed in violation of General Order G07-03 Vehicle Towing And Relocation Operations Section IV-A-7. [1 count(s)]

**Accused:** LUIS NUNEZ
**Rank:** POLICE OFFICER
**Star Number:** 18229

**RECOMMENDED PENALTY:** 600 - NO ACTION TAKEN / NOT SUSTAINED / EXONERATED / UNFOUNDED

### Allegations

#### 1 - Unfounded - Operation/Personnel Violations/Neglect of Duty

**Allegation:** It is alleged by Reporting Party ████████ that between the dates 14 Mar 22 and 15 Mar 22, between 2035-0051hrs, at 1900 W Monterey, Chicago, IL 60643, the Accused Police Officer Luis NUNEZ #18229 had ████████ vehicle towed for no reason.

#### 2 - Not Sustained - Arrest/Lockup Incidents/Prisoner's Property

**Allegation:** It is alleged by Reporting Party ████████ that between the dates 14 Mar 22 and 15 Mar 22, between 2035-0051hrs, at 1900 W Monterey, Chicago, IL 60643, the Accused Police Officer Luis NUNEZ #18229 failed to inventory clothes, a vehicle battery charger, and Covid testing equipment located in ████████ vehicle prior to it being towed.

cpdp > Gabriel Campos

Internal
Allegations

Civilian
Allegations

Use of Force
Reports

?

# Gabriel Campos

47 years old, hispanic, male.

| | |
|---|---|
| Badge | 21532 |
| Rank | Sergeant Of Police |
| Unit | Unit 610 - Detective Area - Central |
| Career | NOV 27, 2006 — Present |

| | |
|---|---|
| **15** Allegations More than 84% of other officers | **1** Sustained 1 Disciplined |
| **22** Use of Force Reports More than 94% of other officers | **$100.0K** Total Lawsuit Settlements |



| 0 | 86 |
|---|---|
| Major Awards | Honorable Mentions |
| | More than 95% of other officers |

**Timeline**  **Map**  **Coaccusals**  **Documents**

All (61) ⌄

### 2021

| Detective → **Sergeant** | OCT 16 |
|---|---|

### 2020

| Unit 022 → **Unit 610 - Detective Area - Central** | APR 30 |
|---|---|
| Field Training Officer → **Detective** | APR 16 |

### 2019

| A  Emblem Of Recognition - Physical Fitness | OCT 30 |
|---|---|
| C  **Traffic**<br>Unknown, | JUN 2 |

| A | 2019 Crime Reduction Award | JAN 1 |
|---|---|---|

**2018**

| F | Taser | DEC 14 |
|---|---|---|
| A | Emblem Of Recognition – Physical Fitness | OCT 30 |
| A | Life Saving Award | OCT 11 |
| F | Use of Force Report | MAY 19 |

**2017**

| F | Use of Force Report | DEC 25 |
|---|---|---|
| A | Emblem Of Recognition – Physical Fitness | OCT 30 |
| F | Taser | JUN 17 |
| F | Use of Force Report | MAR 8 |

Unit 006 → **Unit 022 - District 022**                    FEB 26

| A | Field Training Service Award | FEB 3 |

Police Officer → **Field Training Officer** — FEB 1

## 2016

| A | Emblem Of Recognition – Physical Fitness | OCT 31 |

## 2015

| A | Emblem Of Recognition – Physical Fitness | OCT 29 |

| F | **Use of Force Report** | MAY 8 |

| A | Unit Meritorious Performance Award | JAN 1 |

## 2014

| A | Emblem Of Recognition – Physical Fitness | OCT 29 |

| F | **Use of Force Report** | OCT 25 |

| C | **Use Of Force**
Exonerated, No Action Taken | JUN 10 |

### Excessive force/minor
16-CV-5646

JUN 9

### Lockup Procedures
No Affidavit, No Action Taken

JUN 1

### Use of Force Report

JAN 5

### Unit Meritorious Performance Award

JAN 1

## 2013

### False Arrest
No Affidavit, No Action Taken

NOV 25

### Use of Force Report

NOV 18

### Illegal Search
No Affidavit, No Action Taken

OCT 30

### Emblem Of Recognition - Physical Fitness

OCT 29

### Illegal Search
No Affidavit, No Action Taken

SEP 19

### False Arrest
No Affidavit, No Action Taken

AUG 10

## 2012

**EXHIBITS 35**

| A | Problem Solving Award | DEC 28 |
|---|---|---|

| A | Attendance Recognition Award | DEC 1 |
|---|---|---|

| F | **Use of Force Report** | NOV 25 |
|---|---|---|

| A | Emblem Of Recognition – Physical Fitness | OCT 29 |
|---|---|---|

| C | **False Arrest**<br>No Affidavit, Unknown | OCT 17 |
|---|---|---|

| F | **Use of Force Report** | SEP 10 |
|---|---|---|

| C | **Use Of Force**<br>Exonerated, No Action Taken | SEP 10 |
|---|---|---|

| F | **Use of Force Report** | JUL 27 |
|---|---|---|

| F | **Taser** | JUL 2 |
|---|---|---|

| A | Nato Summit Service Award | MAY 18 |
|---|---|---|

| F | **Use of Force Report** | MAR 14 |
|---|---|---|

**2011**

| A | Emblem Of Recognition – Physical Fitness | OCT 29 |

| F | **Use of Force Report** | OCT 16 |

| F | **Use of Force Report** | JUN 16 |

| A | Traffic Stop Of The Month Award | MAY 3 |

**2010**

| A | Emblem Of Recognition – Physical Fitness | OCT 29 |

| C | **Illegal Search**
No Affidavit, No Action Taken | SEP 2 |

| F | **Use of Force Report** | JUL 9 |

| F | **Use of Force Report** | FEB 3 |

| C | **Use Of Force**
Unfounded, No Action Taken | FEB 3 |

**2009**

| A | Attendance Recognition Award | DEC 1 |

| A | Emblem Of Recognition – Physical Fitness | OCT 29 |

| C | **Lockup Procedures**
Sustained, Reprimand | OCT 9 |

| F | **Use of Force Report** | MAY 28 |

| C | **Use Of Force**
Not Sustained, No Action Taken | MAY 28 |

| A | 2009 Crime Reduction Award | JAN 1 |

**2008**

| C | **Operation/Personnel Violations**
No Affidavit, No Action Taken | SEP 25 |

| F | **Use of Force Report** | SEP 20 |

| F | **Use of Force Report** | JUL 14 |

| Unit 044 → Unit 006 – District 006 | MAY 22 |

**2007**

EXHIBITS 38

| F | **Use of Force Report** | AUG 22 |

| C | **Operation/Personnel Violations**
No Affidavit, No Action Taken | MAY 21 |

**2006**

| A | Attendance Recognition Award | DEC 1 |

Joined CPD                                                                      NOV 27

Timeline    Map    Coaccusals    Documents

Legal    Github    Contact

**INVISIBLE INSTITUTE**