UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CORDARRO T. DORSEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:25 C 01212 ) |
| Officers CARLOS PONCE, ANTHONY SANCHEZ, MARCUS TURNER, and Sergeant GABRIEL CAMPOS, | ) Judge Rebecca R. Pallmeyer ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

On the evening of February 23, 2023, Plaintiff Cordarro Dorsey was pulled over by officers of the Chicago Police Department ("CPD"). After he refused officers' orders to exit the vehicle, Dorsey was detained and handcuffed, and his vehicle was searched. Dorsey admits that he was driving without a front license plate, but asserts that the officers' decision to pull him over, and their conduct during the stop, violated the U.S. Constitution and Illinois state law. He brings this pro se lawsuit under 42 U.S.C. § 1983, *et seq.*, and state tort law, seeking monetary damages, attorney's fees, and an injunction ordering "[p]olicy reforms." (Second Am. Compl. [19] at 6.) The City has moved to dismiss Dorsey's Amended Complaint in full, pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6).[1] As explained below, this motion is granted in part and denied in part.

---

[1] Defendants stylize this motion to dismiss as being "pursuant to Federal Rule of Civil Procedure 12(b)(6)." (*See generally* Mot. [22].) Because Defendants challenge Mr. Dorsey's standing to bring some of his claims, the court understands this motion as also being brought pursuant to Rule 12(b)(1), which allows for motions to dismiss for lack of subject matter jurisdiction.

**BACKGROUND**

**I.     Factual Background**

The allegations in Dorsey's Second Amended Complaint [19],[2] are presumed true at the pleading stage. *Hess v. Garcia*, 72 F.4th 753, 756–57 (7th Cir. 2023). Dorsey alleges that on the evening of February 23, 2023, he was driving his vehicle with an unnamed passenger when he was pulled over by CPD Officers Carlos Ponce and Anthony Sanchez. (Second Am. Compl. [19] ¶ 5.) Officer Ponce approached Dorsey's vehicle, and informed him that he was being pulled over because his windows were illegally tinted and because his vehicle had no front license plate. (*Id*.) Dorsey responded that his "car did not have illegal tints," and noted that the Secretary of State had informed him that he "would be fine" so long as his license plate was visible through the front windshield. (*Id*.) Ponce responded that the front plate must be physically bracketed onto the car. (*Id*.) He then ordered Dorsey out of the vehicle. (*Id*.) Dorsey refused, noting that he was a "valid driver" with "valid credentials." (*Id*.) He then requested that he "would like a sergeant be present."[3] (*Id*.) Ponce unlocked the vehicle's driver-side door himself, and continued to order Dorsey to exit the vehicle, warning that Dorsey was "going to jail when the Sergeant arrives." (*Id*.)

Soon after, Officer Turner, another CPD officer, pulled up in his squad car. He "aggressively" parked his vehicle in front of Dorsey's car, blocking him in. (*Id.*) Officer Turner approached Dorsey's vehicle and insisted that he exit the vehicle, but Dorsey refused, and

---

[2]     Shortly after this motion was filed, Dorsey filed a Third Amended Complaint, evidently in an attempt to address the deficiencies that Defendants raised in their motion to dismiss. Under Rule 15(a) of the Federal Rules of Civil Procedure, a plaintiff may only amend a pleading "once as a matter of course." *See* FED. R. CIV. P. 15(a). Future amendments can only be made "with the opposing party's written consent or the court's leave." *See id.* Dorsey appears to have received neither. The Third Amended Complaint [31] is therefore stricken. Future amended pleadings will also be stricken unless Mr. Dorsey attests that he sought and received the written consent of the opposing party, as required by Rule 15.

[3]     Dorsey claims that Ponce "deliberately ignored [his] request for a sergeant." (Second Am. Compl. [19] ¶ 5.) It is not clear what he means by this, as he himself has alleged that a CPD sergeant arrived shortly after he requested one. (*See id.*).

requested that he "not be touched or forced . . . until a sergeant is present." (*Id.*) Despite this, Ponce reached inside of the vehicle and unfastened Dorsey's seatbelt. In response, Dorsey told the officers "I am not refusing, but I am in fear for my life due to [the officers'] aggression." (*Id.*) Officer Sanchez then approached the vehicle's passenger side, and began "harassing" the passenger in an effort to "coerce" Dorsey to exit the vehicle (Dorsey does not describe the nature of the alleged harassment). (*Id.*) Dorsey continued reiterating that he did not consent to a search, and urged that if the officers believed "a traffic infraction truly had been committed, [they should instead] write a ticket and [i]t will be disputed later." (*Id.* (internal quotation marks omitted).)

Some twenty minutes after Dorsey had been pulled over, Sergeant Campos arrived at the scene. The subsequent events are somewhat unclear: Dorsey alleges that upon his arrival, Campos also ordered him out of the vehicle, and that the officers then "forcibly removed" him from the vehicle. (*Id.* ¶¶ 5, 9.) Once he was out of the car, the officers placed Dorsey in handcuffs, and "forcibly removed" his cell phone from his hand, while Dorsey was recording the officers' conduct. (*Id.*) Officer Ponce then proceeded to search the vehicle "with no actual probable cause or warrant." (*Id.*) This search was "purportedly for a license plate" (Pl. Opp. [25] at 2), but Dorsey claims that Ponce in actuality conducted "a fishing expedition" (*id.*), and "went as far as ripping my carpet and flooring from under my center console." (Second Am. Compl. [19] ¶ 5.) He asserts the search of his car lasted for approximately twenty additional minutes, suggesting that the entire stop took roughly forty minutes. (*Id.*)

The complaint does not reveal what happened next—whether Dorsey was placed under arrest or permitted to leave.

II.     **Procedural Background**

On October 19, 2023, Mr. Dorsey sued the City of Chicago and many individual CPD officers, alleging that four separate encounters with the police violated 42 U.S.C. § 1983 and Illinois state tort law. *See* Compl. [1] in *Dorsey v. City of Chicago*, 23 C 15149. Each of these four encounters was a "separate occurrence[] involving different Chicago police officers," and the

3

incidents were otherwise "discrete and separate" from one another. *See Dorsey v. City of Chicago*, 23 C 15149, 2025 WL 327425, at *6–*7 (N.D. Ill. Jan. 28, 2025). Accordingly, on January 28, 2025, the court found that the claims had been misjoined, and directed that Dorsey's claims be severed and docketed as four separate cases. *Id.* at *1, *6. This is one of the resulting cases. Defendants have moved to dismiss the Second Amended Complaint pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6), and the matter has been fully briefed.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. "[S]ubject matter jurisdiction is a fundamental limitation on the power of a federal court to act." *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 980 (7th Cir. 2000). If a federal court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). The plaintiff bears the burden of demonstrating subject matter jurisdiction by a preponderance of the evidence. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003). At this stage in the litigation, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014).

Likewise, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint, not its merits. FED. R. CIV. P. 12(b)(6); *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive, a complaint "must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

*Pro se* complaints like Dorsey's are construed liberally. *Johnson v. Prentice*, 29 F.4th 895, 903 (7th Cir. 2022). Nonetheless, even pro se pleadings must go beyond mere labels and

conclusions and "raise a right to relief above the speculative level" to survive a motion to dismiss. *Brockett v. Effingham Cnty., Ill.*, 116 F.4th 680, 685 (7th Cir. 2024) (quoting *Twombly*, 550 U.S. at 555). The court need not "imagine every possible argument" in Dorsey's favor simply because he is pro se. *Harris v. United States*, 13 F.4th 623, 629 (7th Cir. 2021).

## DISCUSSION

Dorsey's Second Amended Complaint is somewhat difficult to decipher. Contrary to Rule 8(d)(1)'s direction that "[e]ach allegation must be simple, concise, and direct," Dorsey's factual allegations appear in two lengthy paragraphs. The complaint is otherwise replete with passing reference to dozens of legal principles, and includes numerous citations to court cases, some of which do not stand for the proposition for which they are cited or do not exist at all.[4] The court assumes that Dorsey intends to bring the claims that he lists in the sections entitled "Common Law Claims" and "Claims for Relief" at the end of the document. That list includes claims under the Fourth Amendment, the First Amendment, and failure to intervene claims under 42 U.S.C. § 1983 (Counts 1–3); a civil rights conspiracy claim under 42 U.S.C. § 1985 (Count 4); and state tort law claims (including trespass to chattels, assault, battery, and intentional infliction of emotional distress) (Count 5). Dorsey seeks damages, and requests an injunction ordering "[p]olicy reforms." (Second Am. Compl. [19] at 6.)

Defendants have moved to dismiss all counts. With respect to injunctive relief, they argue that Dorsey lacks standing; with respect to other remedies, they contend that Dorsey has not put forward sufficient factual matter to support a plausible claim for relief. The court notes that

---

[4] The court suspects that many of these cases are the product of an artificial intelligence tool. For example, Dorsey cites to "State v. Slowikowski, Ohio 2003," "U.S. v. Weaver, 9th Circuit, 2016," and "Mackey v. Town of Allendale, 2021"—none of which the court was able to locate. While a *pro se* party is given a fair amount of procedural leeway, even an unrepresented litigant is expected to provide accurate citations to case law. *See, e.g.*, *Powhatan Cnty. Sch. Bd. v. Skinger*, No. 3:24 CV 874, 2025 WL 1559593, at *10 (E.D. Va. June 2, 2025) (collecting cases). Dorsey is ordered to include, in all future filings, a traditional reporter or database citation for any cases he cites. Dorsey is warned, as well, that fabricated or hallucinated case citations in future filings will result in sanctions, including an order striking the filing and possible dismissal of the lawsuit.

Defendants do not specifically address each of the numerous claims that Dorsey purports to make. This oversight is not unreasonable, given that Dorsey's pleadings are lengthy and fragmented. And Defendants' failure to address any particular claim may not result in that claim surviving this motion, as the court is free to dismiss claims *sua sponte* when the allegations are legally insufficient. *See Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) ("Sua sponte 12(b)(6) dismissals are permitted, provided that a sufficient basis for the court's action is evident from the plaintiff's pleading." (citation omitted)). This is appropriate where, like here, a plaintiff makes passing reference to many legal principles that are clearly not supported by the pleaded facts.

I.  **Standing**

The court begins with standing. Article III "confines" federal jurisdiction "to 'Cases' and 'Controversies.'" *FDA v. All. For Hippocratic Med.*, 602 U.S. 367, 378 (2024). For there to be a "Case" or a "Controversy," each plaintiff in federal court must demonstrate standing—a "personal stake" in the case and its outcome. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). The "irreducible constitutional minimum" of standing is composed of three elements: (1) an injury in fact, (2) caused by the defendant, (3) that would likely be redressed by judicial action. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "As the party invoking federal jurisdiction," Mr. Dorsey bears the burden of establishing standing. *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 528 (7th Cir. 2024) (citing *Silha v. ACT, Inc.*, 808 F.3d 169, 173 (7th Cir. 2015)).

Dorsey's standing to pursue damages is not in doubt; Defendants contest only his standing to pursue injunctive relief.[5] To seek such relief, Mr. Dorsey must demonstrate "a substantial risk of future injury that is traceable to the Government defendants and likely to be redressed by an injunction against them." *Murphy v. Missouri*, 603 U.S. 43, 69 (2024). His injury

---

[5] Dorsey's past encounter with the police, as alleged, constitutes a concrete injury in fact, caused by Defendants, that is redressable by a favorable court decision. He thus has standing to pursue damages based on harms that occurred in the past.

6

need not be "literally certain," but "it must be 'certainly impending.'" *Scholl v. Ill. State Police*, 776 F. Supp. 3d 701, 709 (N.D. Ill. 2025) (citing *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 410, 414 n.5 (2013)). As the Supreme Court explained in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) (the sole case cited by Dorsey on this point[6]), a "federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." *Id.* at 111. To establish standing to seek injunctive relief, therefore, Dorsey must do more than simply point to past mistreatment to him personally; he must show "a sufficient likelihood that he will again be wronged in a similar way." *Id.*

Dorsey has not done so. He has made no factual allegations that suggest he is at imminent risk of future harm. He offers only the conclusory statement that "Plaintiff and others risk repeated violations by defendants employed by the City," but under *Lyons*, the mere risk of future harm is not sufficient for Article III standing.[7] Dorsey's requests for injunctive relief are therefore dismissed for lack of standing.

## II. Federal Law Claims
### A. Fourth Amendment

The court now turns to the merits of Dorsey's claims. The Second Amended Complaint expressly enumerates four alleged violations of the Fourth Amendment: (1) unlawful seizure, (2)

---

[6] Dorsey characterizes this case as holding that an "injunction [is] proper where policy or practice poses ongoing risk." (Opp'n [25] at 2.) In fact, however, in *Lyons,* the Supreme Court *reversed* entry of an injunction prohibiting police officers from using "chokeholds." The Court held that the fact the individual plaintiff had been illegally choked did not establish a real and immediate threat that it would happen again—meaning that the federal court lacked jurisdiction to enter the injunction. *See Lyons*, 461 U.S. at 106 (holding that the plaintiff "has failed to demonstrate a case or controversy with the City that would justify the equitable relief sought").

[7] Dorsey separately asks the court to acknowledge "Plaintiffs Beneficiary standing, and as Co Trustee of trust RF 159 212 970 US Private Trust; governed under U.S. Constitution, Common Law, and Equity Jurisprudence." (*Id.*) This is nonsense—this matter does not involve a trust, and Dorsey does not explain what this phrase means. To the extent he intends this to be a claim, it is also dismissed.

excessive force, (3) prolonged detention, and (4) unlawful search. The court construes Dorsey's pleading as bringing these four claims under § 1983, and considers each in turn.

### 1. Unlawful Seizure

Dorsey's core allegation is that the officers lacked a sufficient basis for the traffic stop, making it an unlawful seizure under the Fourth Amendment. "'[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.'" *United States v. Lewis*, 920 F.3d 483, 489 (7th Cir. 2019) (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)). Probable cause exists "when the facts and circumstances . . . are sufficient to warrant a prudent person in believing the suspect had committed or was committing an offense." *Maxwell v. City of Indianapolis,* 998 F.2d 431, 433 (7th Cir. 1993) (cleaned up).

Dorsey's claims on this theory are undercut by his own allegations. In the Second Amended Complaint, Dorsey acknowledges that he was pulled over because he was, in fact, driving without a license plate affixed to the front of his vehicle. Because Illinois law requires that a license plate be affixed to the "frontmost" part of the vehicle, *see* 625 ILCS 5/3-413(a), Dorsey's violation of that law gave the police probable cause to initiate a traffic stop. *See United States v. Smith*, 107 F. App'x 651, 653 (7th Cir. 2004) (finding that failure to affix a license plate to a car constitutes probable cause that can justify a traffic stop). Dorsey thus cannot state a claim of unlawful seizure.

In response, Dorsey argues that he was not violating Illinois traffic laws, because his license plate was visible through the front windshield, and the windshield could be "reasonably interpreted as the 'frontmost part' under the statute's plain language." (Opp'n [25] at 1.) This is unpersuasive. The statute's plain language instructs that "[r]egistration plates issued for a motor vehicle . . . shall be *attached* thereto, one in the frontmost and one in the rearmost." 625 ILCS 5/3–413(a). Contrary to Dorsey's assertions, placing the license plate in the windshield is not "attaching" it to the car. Several federal and state authorities have so held. For example, in *Harris*

*v. Melchor*, No. 24-2468, 2025 WL 972467 (7th Cir. Apr. 1, 2025), the plaintiff made the same argument Dorsey raises here—he was pulled over for driving without a front license plate, and contended in an action under § 1983 that the stop was unlawful because his license plate was visible through the front windshield. Affirming summary judgment for the defendant officers, the Seventh Circuit observed that Illinois state law clearly "prohibits a driver from displaying the license plate in the front windshield of the car." *Id.* at *4. And in *People v. Parker*, 354 Ill. App.3d 40, 820 N.E.2d 1016 (1st Dist. 2004), where defendant challenged his weapons conviction as the product of an unlawful search of his vehicle, the Illinois Appellate Court rejected the argument that a license plate violation did not constitute probable cause for officers to stop his car. *See id.* at 46-47, 820 N.E.2d at 1024 ("[T]he Illinois Vehicle Code require[s] that license plates be in a clearly visible position. A license plate displayed inside the front windshield of a minivan, is not in a clearly visible position."); *see also Mordi v. Zeigler*, No. 3:11-CV-00193-NJR, 2020 WL 2425796, at *3 (S.D. Ill. May 12, 2020) (granting summary judgment in a § 1983 challenge to a traffic stop; "[d]isplaying a required plate on the windshield of a vehicle is against the law and thus gave [the officer] probable cause to stop [the plaintiff's] vehicle.").

Dorsey also claims that he consulted with the Illinois Secretary of State, who confirmed the validity of his interpretation of the statute. (Second Am. Compl. [19] ¶ 5.) The Secretary's alleged (apparently inaccurate) statement is not relevant here; by Dorsey's own admission, the officers had probable cause to stop him. His unlawful seizure claim is dismissed.

### 2. Excessive Force

Dorsey next alleges that by "forcibly remov[ing] Plaintiff from the vehicle without justification," the officers used excessive force in violation of the Fourth Amendment. (*Id.* ¶ 9.) Fourth Amendment claims of excessive force are analyzed under the "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The *Graham* inquiry requires "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests," such as officer safety. *Id.* at 396 (quoting

9

*Tennessee v. Garner*, 471 U.S. 1, 8 (1985)) (quotations omitted). A court must weigh the totality of the circumstances, "including facts and events leading up to" the use of force, "the severity of the crime" at issue, whether the suspect poses an "immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*; *see also Barnes v. Felix*, 605 U.S. 73, 76, 80 (2025).

Defendants argue that the "alleged conduct could not amount to excessive force." (Reply [28] at 6.) The court agrees. Dorsey alleges two incidents of physical contact—(1) that the officers forced him to exit his vehicle, and (2) subsequently placed him in handcuffs—but his allegations do not support an inference that either of these acts was improper. Both alleged instances of force appeared to be justified, as both occurred only after he ignored officers' repeated and lawful instructions to exit the vehicle; officers "may as a matter of course order the driver of a lawfully stopped car to exit his vehicle." *Maryland v. Wilson*, 519 U.S. 408, 410 (1997). Dorsey does not allege anything about the nature of the force used, the extent of the conduct, or any injuries that resulted. In short, there is no basis here for a plausible inference that the officers' conduct was objectively unreasonable. The mere allegation that force occurred, and that said force was "excessive," does not, without more, state a plausible claim. *See Iqbal*, 556 U.S. at 678 (a plaintiff must put forward more than "an unadorned, the-defendant-unlawfully-harmed-me accusation").

### 3. Unlawful Search

Dorsey also targets the search itself, claiming that Officer Ponce violated § 1983 by searching his vehicle without probable cause. "To state a claim under the Fourth Amendment, a plaintiff must show that a search or seizure occurred and that the search or seizure was unreasonable." *Hess*, 72 F.4th at 761. A search occurs "when the government violates a subjective expectation of privacy that society recognizes as reasonable." *United States v. Scott*, 731 F.3d 659, 663 (7th Cir. 2013) (quoting *Kyllo v. United States*, 533 U.S. 27, 33 (2001)). Warrants are typically required for searches, but under the automobile exception, "officers may search an automobile without having obtained a warrant so long as they have probable cause to

do so." *Collins v. Virginia*, 584 U.S. 586, 592 (2018). And probable cause exists whenever, "given the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in" the vehicle. *United States v. Eymann*, 962 F.3d 273, 286 (7th Cir. 2020) (citation and internal quotation marks omitted).

On this point, Dorsey appears to have alleged sufficient factual matter to survive the motion to dismiss. From his factual narrative, it is reasonable to infer that the officers lacked a reasonable basis to believe that there was contraband or evidence in the vehicle, as the alleged basis for stopping Dorsey was a missing license plate and illegally tinted windows. Defendants do not meaningfully contest this point; while they argue that the traffic stop was lawful, they make no argument as to the search during the stop.[8] It could well be the case that the officers are entitled to qualified immunity,[9] as the City seems to believe, or that the evidence will indicate that the officers had a sound legal basis for the stop. But at this stage of the litigation, looking only at the facts on the face of the Second Amended Complaint, the court declines to dismiss Dorsey's unlawful search claim.

### 4. Prolonged Detention

Finally, Dorsey claims that his stop was unlawfully prolonged in violation of the Fourth Amendment. A traffic stop is unlawfully prolonged if it lasts "longer than is necessary" to address

---

[8] Defendants do argue that each of the § 1983 claims must be dismissed because "the plaintiff alleges the officers 'failed' to act under color of law," negating an essential element of § 1983. (Mot. [22] at 4–5.) Dorsey's Second Amended Complaint does so allege, but context makes clear that the allegation was a mistake; and he has corrected the error in his brief in opposition to this motion. (*See generally* Opp'n [25].) The court declines to dismiss the complaint on this basis.

[9] Dorsey asks the court to find that Defendants are barred from "claiming qualified immunity or lawful justification" under the unclean hands doctrine due to their failure to produce officer body camera footage. (Second Am. Compl. [19] at 5.) This argument is a non-starter. The sole authority he cites is *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806 (1945), a patent law case from the 1940's that has nothing to do with the circumstances here. The court declines to bar Defendants from asserting any valid defenses in this case, which remains at the pleading stage. The court has not set a discovery schedule, nor are any discovery motions before the court.

the infraction at issue; "[a]uthority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). The notion that the traffic stop at issue here was longer than necessary is doubtful. Dorsey himself alleges that it lasted approximately forty minutes, with much of that time spent awaiting the arrival of the sergeant at Dorsey's own request. Dorsey's request for a sergeant and his refusal to obey officers' orders to exit the vehicle appear to be the primary reason for any delay. *Cady v. Sheahan*, 467 F.3d 1057, 1063 (7th Cir. 2006) ("When delay is attributable to the evasive actions of a suspect, the police do not exceed the permissible duration of an investigatory stop.").

Dorsey does, however, allege that Officer Ponce "abandoned the stop's purported purpose—issuing a citation—to forcibly remove Plaintiff from his vehicle, search it without consent, and inflict property damage." (Opp'n [25] at 1.) This allegedly improper search could potentially have unlawfully prolonged the stop. As the Supreme Court explained in *Rodriguez*, the "officer's mission" in a traffic stop includes actions such as "determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." 575 U.S. at 355. The search of Dorsey's vehicle, in contrast, could have been "a measure aimed at detecting evidence of ordinary criminal wrongdoing," that lacked a "close connection to roadway safety." *See id.* at 355–56 (cleaned up). Dorsey's allegation that his vehicle was unlawfully searched during this traffic stop without probable cause supports a plausible inference that the police "detour[ed] from the mission of the stop" and thus prolonged it. *Cf. United States v. Avilia*, 106 F.4th 684, 695 (7th Cir. 2024) (upholding denial of suppression motion; defendant was subject to a traffic stop, and officers recovered a weapon from his person in a frisk six minutes after he was removed from the car).

\* \* \* \* \*

The motion to dismiss is denied with respect to Mr. Dorsey's prolonged detention and unlawful search claims. Dorsey's other Fourth Amendment claims are dismissed.

### B. First Amendment

To state a claim of retaliation under the First Amendment, Dorsey must show (1) that he engaged in constitutionally protected speech; (2) that but for the protected speech, the officers would not have taken the same action against him; and (3) that he suffered a deprivation that would likely deter First Amendment activity by similarly situated individuals in the future. *See Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 501 (7th Cir. 2010); *see also Nieves v. Bartlett*, 587 U.S. 391, 399 (2019) (clarifying that a plaintiff must establish but-for causation to succeed on a retaliatory arrest claim). Causation can be shown via either direct or circumstantial evidence. *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 586 (7th Cir. 2021)

Dorsey's theory of this claim has evolved over time. In the operative complaint, Dorsey alleged that officers violated the First Amendment by seizing his phone in retaliation for his recording. (Second Amended Compl. [19] at 6.) But as Defendants point out, this claim, too, is undermined by Dorsey's own allegations. (Mot. [22] at 7.) Dorsey alleges that the officers removed the phone from his hand only *after* they had moved to detain him and place him in handcuffs, meaning that the phone was seized to effectuate his detention. No factual allegations would support an inference that the traffic stop or arrest was motivated by retaliation. *See E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (a complaint must "actually suggest that the plaintiff has a right to relief").[10] At most, Dorsey alleges a temporal connection—that he was detained following his recording of the officers—but timing alone, in this context, is not enough to state a claim. *See FKFJ*, 11 F.4th at 586. Otherwise, every suspect who is detained in an interaction where they are recording the police would have a cognizable

---

[10] On this point, Dorsey cites to *Nieves v. Bartlett,* 587 U.S. 391 (2019), which he characterizes as holding that "causal connection exists if adverse action follows protected speech." (Opp. [25] at 2.) This misstates *Nieves*. The *Nieves* court stated that it "is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* at 398–99. Dorsey makes no allegations supporting an inference of but-for causation.

13

First Amendment claim, which is clearly not the law. Additional factual allegations were needed, and Dorsey did not make them.

In his brief in opposition, Dorsey raises a new theory: he now asserts that the officers' "escalation" of the stop (which he characterizes as "unlawful seizure, physical force, [and] vehicle damage") was in response to his verbal statement that "I do not consent to searches" and his informing the officers that he intended "to challenge the stop in court." (Opp. [25] at 2.) This makes little sense. For one, the seizure could not have been in response to his verbal assertion of rights, as the traffic stop is the seizure at issue, and the stop was initiated prior to any communications between Dorsey and the officers.[11] But more importantly, Dorsey alleges no facts suggesting that the officers' use of physical force or damage of the vehicle was motivated by these statements. At most, he offers only the conjectural allegation that the officers' actions "violated the Plaintiffs (1st Amendment) rights" (Second Am. Compl. [19] ¶ 27), but this is insufficient to state a claim of First Amendment retaliation.[12] *See Twombly*, 550 U.S. at 555–57 (rejecting a pleading that only offers "labels and conclusions" without additional factual matter).

Count 2 is dismissed.

### C. Failure to Intervene

Dorsey next claims that "Sergeant Campos and other officers failed to stop constitutional violations," which constitutes failure to intervene under § 1983. (Second Am. Compl. [19] ¶ 12.) An officer is liable for failure to intervene if "any constitutional violation has been committed by a

---

[11] To the extent that Dorsey intends to argue that the officers initiated the seizure in response to his prior lawsuits, that is not plausible. There is no basis in this complaint for an inference that Defendants (two of the more than 10,000 sworn CPD officers) were aware of Dorsey's litigation and chose to retaliate against him for this reason.

[12] Dorsey claims that the "complaint alleges a direct nexus between Plaintiff's objections and Defendants' punitive conduct, satisfying notice pleading under FED. R. CIV. P. 8." (Opp'n [25] at 2.) This is not true. As the court explains here, the operative complaint raises an different theory of First Amendment retaliation, one that is premised on his video recording of the officers—not any verbal assertion of rights. (*See* Second Am. Compl. [19] ¶ 11.)

law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

This claim also must be dismissed. It is not clear, from Dorsey's filings, which "constitutional violations" Dorsey alleges that Campos and the others were in a position to stop—he offers only the threadbare assertion that the officers "failed to stop constitutional violations." (Second Am. Compl. [19] ¶ 12.) Assuming that Dorsey is referring to Ponce's search of the vehicle, the complaint never alleges that the other officers knew that the search was ongoing, or that it occurred without probable cause. Without allegations that officers were in a position to intervene, the failure to intervene claim cannot proceed.[13] *See Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020) ("A claim for relief may not proceed merely because some set of facts can be imagined that would entitle a plaintiff to relief.").

### D. Conspiracy

Finally, Dorsey alleges that Defendants conspired to deprive him of his civil rights in violation of 42 U.S.C. § 1985. A claim of conspiracy under § 1985 requires a showing of "(1) the existence of a conspiracy; (2) a purpose of depriving a person or class of persons of equal protection of the laws; (3) an act in furtherance of a conspiracy; and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002). To meet this standard, Dorsey must show "the conspirators have an agreement to inflict injury or harm upon him." *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 263 (7th Cir. 1999). This can be "inferred from circumstantial evidence," but only in cases where a reasonable jury could "conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id.* at 263.

---

[13] In support of his failure to intervene claim, Dorsey cites, without analysis, to "*Sanchez v. Dart*, 2016." This case does not appear to exist; the court could not find any cases from 2016, in any jurisdiction, with that caption. There is a case from 2020, *Sanchez v. Dart*, No. 1:19-CV-4139, 2020 WL 2085005 (N.D. Ill. Apr. 30, 2020), but that case deals with a prisoner who alleges that prison officials failed to adequately protect him from assaults by other prisoners, and has no obvious application here.

Dorsey does not allege the existence of a conspiracy or provide any basis from which a reasonable mind could infer that Defendant officers agreed to a violation of his rights. The conspiracy claim is dismissed.

### III.  State Law Claims

The court next turns to Dorsey's four Illinois state law tort claims: battery, assault, intentional infliction of emotional distress ("IIED"), and trespass to chattels.[14] (Second Am. Compl. [19] at 5.) Defendants have moved to dismiss each of these claims, arguing that Plaintiff's allegations are insufficient and that Defendants are immune from liability for these torts under state law.

Defendants raised their immunity defense for the first time in their reply brief, so the court declines to dismiss the claims on this basis, but notes that the argument appears to have traction. Under the Illinois Tort Immunity Act, a "public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." *See* 745 ILCS 10/2-202. The statute defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. Dorsey does not allege that any of the officers' actions were willful or wanton. In his Second Amended Complaint, Dorsey alleges that he was pulled over for a license plate violation and ordered out of the vehicle; that he refused to comply; and that once he was out of the vehicle, he was temporarily handcuffed while his car was searched. It is unlikely that a reasonable jury could find that this conduct constitutes an "actual or deliberate intention to cause

---

[14] Federal jurisdiction over these claims is proper under the supplemental jurisdiction statute, 28 U.S.C. § 1367. The court has original jurisdiction over Dorsey's § 1983 and § 1985 claims because they "aris[e] under" federal law, *see* 28 U.S.C. § 1331. The state law claims arise out of the same set of underlying facts, so the court has supplemental jurisdiction over them under § 1367. Defendants ask the court to relinquish jurisdiction over the state law claims, but such a request is premature, given that one of Dorsey's § 1983 claims has, for now, survived the motion to dismiss.

harm." *See id.* That the officers allegedly laughed at Dorsey or prolonged his detention in the cold is unlikely to constitute willful or wanton conduct.

Immunity aside, Dorsey's allegations do not state claims for battery, assault, or IIED under Illinois law. The court begins with battery: in its simplest terms, the common law tort of battery in Illinois is "the unauthorized touching of the person of another." *Wilson v. City of Chicago*, 758 F.3d 875, 879 (7th Cir. 2014) (quoting *Curtis v. Jaskey*, 326 Ill. App. 3d 90, 93, 759 N.E.2d 962, 964 (2d Dist. 2001)). To state a claim of battery, Dorsey must show that the officers "'intended to cause a harmful contact, that harmful contact resulted and that the plaintiff did not consent.'" *Wagner v. Cook Cnty. Sheriff's Off.*, 453 F. Supp. 3d 1101, 1102 (N.D. Ill. 2020) (quoting *Happel v. Wal-Mart Stores, Inc.*, 319 F. Supp. 2d 883, 885 (N.D. Ill. 2004)). He makes no such showing. Mr. Dorsey appears to base his battery claim on the officers' "unfastening [of his] seatbelt against [his] will or consent." (Second Am. Compl. [19] ¶ 38.) But this does not rise to the level of battery, as the unfastening of a seatbelt in this context is not harmful nor offensive. *Cf. Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 622–23 (7th Cir. 1989) (affirming summary judgment on battery claim against defendant airline whose staff took plaintiff by the arm and fastened her seatbelt; this was not harmful contact). Aside from this, the only physical contact alleged by Dorsey is the officers' removal of him from his vehicle, their handcuffing of him, and their seizing his cell phone. None of these instances of conduct are harmful or offensive, given that each act was taken to effectuate his detention, and "an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *See Graham*, 490 U.S. at 396.

His assault claim is similarly flawed. Under Illinois law, such a claim requires an "allegation of a reasonable apprehension of an imminent battery." *McNeil v. Carter*, 318 Ill. App. 3d 939, 944, 742 N.E.2d 1277, 1281 (3d Dist. 2001). Dorsey believes that the officers' threatened removal of him from his vehicle qualifies as assault, but again, the law allows for an officer to make a

17

reasonable threat of physical force to achieve compliance with the officer's lawful demand. Dorsey's refusal to exit the vehicle, in this context, privileges the officers' threatening of force.

Finally, the IIED claim is also barred. Under Illinois law, to state an IIED claim, a plaintiff must establish (1) that the conduct was "truly extreme and outrageous;" (2) that Defendants "intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would have caused such distress"; and (3) "the conduct in fact caused severe emotional distress." *Sun v. Xu*, 99 F.4th 1007, 1013 (7th Cir. 2024). Nothing about Dorsey's allegations suggests that the officers' actions were "truly extreme and outrageous"; more importantly, Dorsey has not alleged that he suffered any actual emotional distress as a result of the incident.

Notably, Dorsey does not have an answer to any of these arguments raised by Defendants. His brief in opposition focuses solely on arguments relating to supplemental jurisdiction, not the underlying challenges to the merits of his claims. Dorsey's battery, assault, and IIED claims are dismissed.

That leaves Dorsey's claim of trespass to chattels. Dorsey bases this claim on the allegation that "Officer Ponce['s] destruction of my vehicle's interior (ripped carpet and console)" constitutes trespass to chattels under Illinois law. (Second Am. Compl. [19] ¶ 37.) Under Illinois law, trespass to chattels by can be committed by "intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another.' *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 850 (N.D. Ill. 2023). A "harm to the personal property or diminution of its quality, condition, or value as a result of a defendant's use can result in liability." *Smith v. City of Chicago*, 143 F. Supp. 3d 741, 761 (N.D. Ill. 2015) (cleaned up) (citation and internal quotation marks omitted).

Dorsey appears to have stated a claim of trespass to chattels. He alleges that Officer Ponce, in executing the search warrant, unnecessarily harmed his vehicle's interior. (Second Am. Compl. [19] ¶ 37.) While he does not specifically allege that Ponce's actions "intermeddled" with

18

his use of his vehicle, it is a fair inference, given the detailed allegations of property damage that Dorsey does make. Officer Ponce may be entitled to state law immunity (as argued in Defendants' reply brief), or may be able to show that his conduct is otherwise privileged. *See, e.g.*, *Trover v. Oglesby*, No. 3:18-CV-1464-DWD, 2024 WL 1529799 (S.D. Ill. Apr. 9, 2024) (holding barred, under the Immunity Act, plaintiff's claim of trespass to chattels against arresting officers who performed an inventory search of his car). For now, however, the trespass to chattels claim survives dismissal.

## **CONCLUSION**

The motion to dismiss [22] is granted in part and denied in part. Defendants are directed, within 21 days, to file their answer to Plaintiff's claims under the Fourth Amendment and his state law trespass to chattels claim. All other claims are dismissed.

ENTER:

Dated: December 4, 2025

_____
REBECCA R. PALLMEYER
United States District Judge

19