**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **CORDARRO T. DORSEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **No. 1:25 C 01212** |
| ) | |
| **GABRIEL CAMPOS, CARLOS PONCE,** ) | **Judge Rebecca R. Pallmeyer** |
| **ANTHONY SANCHEZ, MARCUS TURNER,** ) | |
| **and CITY OF CHICAGO,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

This case is one of several that Plaintiff Cordarro Dorsey has filed against Chicago police officer whom he believes have violated his constitutional rights. In the episode at issue here, on February 13, 2023, Dorsey was pulled over by Chicago police officers who searched his car, causing damage to the vehicle's interior. The incident prompted this lawsuit pursuant to 42 U.S.C. § 1983. After some procedural twists and turns, Dorsey eventually filed a sprawling Second Amended Complaint ("SAC") that asserts claims under federal and state law. In December 2025, the court issued a lengthy written opinion dismissing the majority of Dorsey's claims—including an unlawful seizure claim—but allowing him to proceed on his unlawful search and prolonged detention claims. *See Dorsey v. Ponce* ("*Dorsey I*"), No. 1:25 C 01212, 2025 WL 3484962 (N.D. Ill. Dec. 4, 2025). Dorsey now seeks a re-do: he has filed, without seeking leave of court, a Third Amended Complaint ("TAC"). The factual allegations in the TAC are materially identical to those in the SAC, and Dorsey has attempted to resurrect the unlawful seizure claim the court previously dismissed. Defendants have again moved to dismiss, and as explained below, the court stands by its prior conclusions. Dorsey's unlawful seizure claim is dismissed, but he may proceed on unlawful search and prolonged detention theories.

## BACKGROUND

**I.     Factual Background**

The facts laid out below are taken from Dorsey's Third Amended Complaint [38] ("TAC"), which the court accepts as true at the pleading stage.[1] *See Ruiz v. Pritzker*, 162 F.4th 886, 889 (7th Cir. 2025).

On February 13, 2023, Dorsey alleges, he was "lawfully operat[ing] a vehicle" when he stopped at a Citgo gas station to refuel.  (TAC [38] ¶ 15.)  While he was pumping gas, a CPD vehicle containing Defendant Officers Ponce and Sanchez arrived on the scene.  The officers noted that Dorsey's car windows were tinted and that he was missing a front license plate.  (*Id.* ¶ 26.)  The officers did not immediately approach Dorsey and did not "advise him of any observed traffic or equipment concern" while he was at the gas station, instead "circl[ing]" the Citgo until Dorsey drove away from the gas station before pulling him over.  (*Id.* ¶¶ 18, 25, 27).

The traffic stop did not go smoothly.  Officer Ponce approached Dorsey and asked him to exit his vehicle.  Dorsey evidently refused, stating he was a "valid driver," and demanded to speak with a CPD sergeant.  (*Id.* ¶ 19.)  In response, Ponce "reached inside the plaintiffs [sic] window and unlocked the driver door, without articulating a reasonable suspicion."  (*Id.* ¶ 20.)  Dorsey alleges that Ponce then "attempted" to force him out of the vehicle, and that the officers conducted what Dorsey characterizes as a "nonconsensual VIN inspection" of the vehicle.  (*Id.* ¶ 34.)

Later, Sergeant Campos arrived on the scene, evidently in response to Dorsey's request.[2] Dorsey, who was still in his vehicle, reported to Campos the about "the nature and aggression within the stop," but Campos participated with the other officers in ordering Dorsey out of the car. (*Id.* ¶ 22.)  Dorsey complied.  He claims that the officers refused to provide "remedy and reason"

---

[1]     Mr. Dorsey erroneously refers to this document as the "Second Amended Complaint."  Dorsey has filed two prior Amended Complaints [19, 31], so this is his third.

[2]     Dorsey alleges that, at some point during the stop, Defendant Officer Turner also arrived at the scene.  (TAC [38] ¶ 24.)  It is not clear whether, and to what extent, Turner was involved in the search that Dorsey describes.

for the stop. (*Id.* ¶ 23.) He alleges, further, that the officers conducted a search of his car. He does not say whether they found anything during the search, but he asserts that the officers caused some damage to the interior of the car and that the stop caused "emotional distress, anxiety, and constitutional injury." (*Id.* ¶ 37.)

## II. Procedural History

On October 19, 2023, Mr. Dorsey sued the City of Chicago and many individual CPD officers, alleging that four separate encounters with the police, including this one, violated 42 U.S.C. § 1983 and Illinois state tort law. *See* Compl. [1] in *Dorsey v. City of Chicago*, 23 C 15149. Each of the four encounters was a "separate occurrence[ ] involving different Chicago police officers," and the incidents were otherwise "discrete and separate" from one another. *See Dorsey v. City of Chicago*, 23 C 15149, 2025 WL 327425, at *6–7 (N.D. Ill. Jan. 28, 2025). Accordingly, on January 28, 2025, the court found that the claims had been misjoined, and directed that Dorsey's claims be severed and docketed as four separate cases. *Id.* at *1, *6. This is one of the resulting cases.

Shortly after severance, Dorsey filed a Second Amended Complaint ("SAC"), and Defendants moved to dismiss. On December 4, 2025, the court issued a lengthy order dismissing the bulk of Dorsey's claims, but allowing but him to proceed on three claims: (1) Fourth Amendment unlawful search, (2) Fourth Amendment prolonged detention, and (3) Illinois law trespass to chattels. *Dorsey I*, 2025 WL 3484962. But one week later, on December 11, 2025, Mr. Dorsey filed—without seeking leave of court—a Third Amended Complaint [38] ("TAC").[3] The TAC's factual allegations are essentially identical to those pleaded in the SAC, but the TAC

---

[3] Under the Federal Rules of Civil Procedure, pleadings can be amended "once as a matter of course." *See* FED. R. CIV. P. 15(a). After that, amended complaints can only be submitted "with the opposing party's written consent or the court's leave." The court explicitly explained this requirement in its prior opinion, *Dorsey I*, 2025 WL 3484962, at *1 n.2, yet Dorsey nonetheless preceded to file the TAC, without seeking leave, just one week later. The court has considered this third amended complaint, but there will be no further amendments.

reasserts the unlawful search claim that was previously dismissed.  Defendants moved to dismiss [45] the TAC in full; a round of briefs followed, and the motion is now fully briefed.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of a complaint—not its merits.  To survive, a plaintiff must allege " 'enough facts to state a claim to relief that is plausible on its face.' "  *Bowlin v. Bd. of Directors, Judah Christian Sch.*, 167 F.4th 469, 474–75 (7th Cir. 2026) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To meet this standard, the complaint must include sufficient " 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Wickstrom v. Air Line Pilots Ass'n, Int'l*, 156 F.4th 835, 841–42 (7th Cir. 2025) (quoting *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 479–80 (7th Cir. 2024)).  In assessing the sufficiency of Dorsey's complaint, the court assumes the truth of the facts he alleges, and draws all reasonable inferences in his favor.  *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 878 (7th Cir. 2022).

Because Dorsey is a *pro se* litigant, his filings are construed liberally.  *Johnson v. Prentice*, 29 F.4th 895, 903 (7th Cir. 2022).  Still, even *pro se* pleadings must go beyond mere labels and conclusions and "raise a right to relief above the speculative level" to survive a motion to dismiss.  *Brockett v. Effingham Cnty.*, 116 F.4th 680, 685 (7th Cir. 2024) (quoting *Twombly*, 550 U.S. at 555).  The court need not "imagine every possible argument" in Dorsey's favor simply because he is pro se.  *Harris v. United States*, 13 F.4th 623, 629 (7th Cir. 2021).

## DISCUSSION

### I.       Fourth Amendment claims

The Fourth Amendment of the U.S. Constitution, applied to the states via the Fourteenth Amendment, protects individuals from "unreasonable searches and seizures."  Dorsey's TAC alleges that Defendants violated the Fourth Amendment in three ways—that the officers conducted of his vehicle without probable cause (TAC [38] ¶¶ 47–50), that the traffic stop itself

was an unlawful seizure (*id.* ¶¶ 43), and that police officers awfully prolonged the stop. (*Id.* ¶ 44.) The court considers each claim in turn.

### A.     Unreasonable Search

To state a claim of unlawful search, Dorsey must show that a search occurred, and that the search was unreasonable. *Hess v. Garcia*, 72 F.4th 753, 756–57 (7th Cir. 2023). A search occurs "when the government violates a subjective expectation of privacy that society recognizes as reasonable." *United States v. Scott*, 731 F.3d 659, 663 (7th Cir. 2013) (quoting *Kyllo v. United States*, 533 U.S. 27, 33 (2001)). While warrants are typically required for searches, there is an exception for automobiles; because vehicles are, by their very nature, easy to move from one place to another, "officers may search an automobile without having obtained a warrant so long as they have probable cause to do so." *Collins v. Virginia*, 584 U.S. 586, 592 (2018). Probable cause for a vehicle search exists whenever "there is a fair probability that contraband or evidence of a crime will be found" inside the car. *United States v. Eymann*, 962 F.3d 273, 286 (7th Cir. 2020) (citation and internal quotation marks omitted).

As the court explained in its earlier order, Dorsey has alleged a plausible claim that officers' search of his vehicle was unlawful. *Dorsey I,* 2025 WL 3484962, at *5. Assuming his allegations are true, officers (1) observed Dorsey driving with tinted windows and without a front license plate; (2) initiated a traffic stop; and (3) searched his vehicle. Dorsey's minor traffic infractions provide adequate justification for the stop, but more was needed before officers could lawfully search his car; not every traffic stop permits a vehicle search. *See Knowles v. Iowa*, 525 U.S. 113, 117–18 (1998) (holding that the Fourth Amendment does not allow officers to conduct a full search of a vehicle solely because the driver was pulled over for a traffic infraction). Defendants contend that Dorsey's refusal to cooperate during the stop gave the officers probable cause for the search. Indeed, the evidence might reveal that Dorsey's interactions with officers, or the surrounding context, were suggestive of weapons or contraband in the car. *See United States v. Radford*, 39 F.4th 377, 386 (7th Cir. 2022) ("In the course of a traffic stop, an officer is justified in conducting a

limited search for weapons if the officer reasonably concludes that the person who has been legitimately stopped might be armed and presently dangerous.").  But such considerations are premature at this early stage, where the court must take all of Dorsey's well-pleaded allegations to be true.[4]

### B.  Unlawful Stop

Next, Dorsey claims that the officers' decision to pull him over constitutes an unreasonable seizure in violation of the Fourth Amendment.  Dorsey also raised this claim in the SAC, but the court dismissed it, as his pleaded facts unambiguously showed that he was driving without a front license plate at the time he was pulled over.  *Dorsey I*, 2025 WL 3484962, at *5.  Because Illinois law requires a front plate, 625 ILCS 5/13-413(a), Dorsey's allegations confirmed that the police had cause to pull him over.[5]

In an apparent attempt to resurrect the unlawful stop claim, Dorsey has simply omitted, from his Third Amended Complaint, the allegations that doomed that claim earlier.  (*See* TAC [38] ¶¶ 1–30 (not mentioning whether Dorsey was driving without a front plate).)  In response, Defendants ask the court to take judicial notice of Cook County court records that show Dorsey

---

[4]  The court also declines to address the possibility of qualified immunity, which shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted).  Defendants' opening brief did not raise the issue, but Dorsey himself did in his opposition brief, citing cases that he believes establish that the officers' conduct violated a clearly established constitutional right.  The court does not comment on those cases or the matter of qualified immunity beyond noting that the defense is not ordinarily a basis for dismissal under Rule 12(b)(6).

[5]  Dorsey's brief in opposition challenges this conclusion, arguing that the fact that police officers "did not stop Plaintiff while stationary, waited until Plaintiff left, then initiated the stop" supports an inference that the stop was "pretextual targeting and investigatory policing." (Opp'n [48] at 2.)  This argument has no merit.  "Investigatory policing" does not run afoul of the Constitution—indeed, it is what police officers do every day.  And "pretextual targeting" is also not necessarily unconstitutional; so long as police officers have cause to pull someone over, the traffic stop is valid, even if the true motive for the stop was something else.  *See United States v. Avila*, 615 F. Supp. 3d 846, 866 (N.D. Ill. 2022) ("If there was a legitimate basis in fact to pull someone over, then it makes no difference that the reason in the officer's heart of hearts was something different.").

was *convicted* of driving with a tinted window on February 13, 2023.[6] (Mot. [45] at 5; Ex. A, Certified Statement of Disposition [45-1].) From this, they argue the claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), as an impermissible collateral attack on the factual predicates of his conviction. (Mot. [45] at 5.) Dorsey does not respond to the *Heck* argument, *see Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver"), and the conviction means that Dorsey's allegation in his TAC that "defendants ultimately issued no citation and recorded no offense" (TAC [38] ¶ 36) is flat-out false. In any event, *Heck* aside, Dorsey's allegations do not support a plausible inference that officers initiated the traffic stop without having cause to do so. *See United States v. Lewis*, 920 F.3d 483, 489 (7th Cir. 2019) (stating that a traffic stop is "reasonable where the police have probable cause to believe that a traffic violation has occurred").

### C.      Prolonged Seizure

Dorsey also argues that the seizure, even if valid on its face, was unlawfully prolonged by the allegedly unlawful search of his vehicle. In *Dorsey I*, the court allowed Dorsey to proceed on this theory, and the court stands by that conclusion today. As Defendants note in response, Dorsey has alleged no facts suggesting that the traffic stop was temporally prolonged; if anything, the stop was prolonged due to Dorsey's own refusal to comply with officers' orders and his demand that a CPD sergeant be present on the scene. Defendants are correct that "delay [] attributable to the evasive actions of a suspect" does not run afoul of the Fourth Amendment. *See Cady v. Sheahan*, 467 F.3d 1057, 1063 (7th Cir. 2006). But as the Supreme Court explained in *Rodriguez v. United States*, 575 U.S. 348 (2015), the police can violate the Fourth Amendment by prolonging an otherwise completed stop to conduct a search not supported by probable cause.

---

[6]      The court may take judicial notice of state court records. *See Daniel v. Cook Cnty.*, 833 F.3d 728, 742 (7th Cir. 2016).

As Dorsey's allegations support a plausible inference that an unlawful search occurred, as explained above, the court declines to dismiss the prolonged seizure claim at this time.

## II. Trespass to Chattels

Finally, Dorsey alleges that Defendants damaged his car while searching the vehicle's interior, constituting trespass to chattels under Illinois law. Under Illinois law, trespass to chattels can be committed by "intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 850 (N.D. Ill. 2023). A "harm to the personal property or diminution of its quality, condition, or value as a result of a defendant's use can result in liability." *Smith v. City of Chicago*, 143 F. Supp. 3d 741, 761 (N.D. Ill. 2015) (cleaned up) (citation and internal quotation marks omitted).

Defendants ask the court to dismiss this claim because he "does not describe what is damaged," but the court declines this invitation. As the court explained in *Dorsey I*, Dorsey alleges that Defendants, in executing the search, damaged the interior of his car. While he does not specifically allege that Defendants "intermeddled" with his use of the vehicle, it is a fair inference from the allegations that Dorsey has made. This claim may proceed.[7]

## III. Artificial Intelligence and this Court's Orders

Before closing, the court addresses an important concern. As the court has previously observed, Mr. Dorsey's past filings cite cases that do not exist; this is a "hallmark[] of so-called AI hallucination, a circumstance where an AI large language model generates an output that is

---

[7] The parties' briefs debate the merits of Dorsey's municipal liability claim. Arguments relating to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) are not ripe and will not be considered at this time. As the court explained in a January 5, 2026 Minute Entry, lengthy argument on *Monell* may be unnecessary in light of the City's indemnification of the involved officers. If Dorsey prevails in his claims against the involved officers, a showing that the City is liable will not increase his recovery. Of course, this would change if the court determines that the officers have qualified immunity from liability, an issue the court declines to address here. *See supra* n. 4. Because a grant of immunity does not equate to a failure to prove an underlying constitutional violation, a *Monell* claim might succeed even if the involved officers are personally immune. *See Matthews v. City of E. St. Louis*, 675 F.3d 703, 709 (7th Cir. 2012).

fictional, inaccurate, or nonsensical." *See Jones v. Kankakee Cnty. Sheriff's Dep't*, 164 F.4th 967, 969–70 (7th Cir. 2026). Suspecting that Dorsey had used AI to prepare his filings, the court directed him to "include a traditional reporter or database citation" for all cited case law in future filings to avoid any confusion. (Order [37] at 5 n.4.) Dorsey did not comply with this order—his brief in opposition includes numerous citations that lack a reporter or database citation.[8] Mr. Dorsey's failure to abide by this court's explicit direction is disappointing—as is his filing of a Third Amended Complaint without leave of court and, most troubling, his false assertion that the February 2023 traffic stop did not result in a citation. Mindful that Dorsey is a *pro se* litigant,[9] the court will not impose sanctions or take any other action at this time, but Dorsey is warned that compliance with this court's orders is not optional. Future unreviewed AI use, failure to include case citations in any future filings, violation of court orders, or false statements in his submissions will result in dismissal of the case and possible referral to this court's executive committee for filing restrictions.

---

[8] Specifically, Dorsey references the cases "*Terry v. Ohio,*" *United States v. Johnson (7th Cir)*," "*Whren,*" "*Arizona v. Gant*," "*Knowles v. Iowa*," "*United States v. Lopez (7th Cir),*" and "*Rodriguez v. United States*," without a database or reporter citation. (*See* Opp'n [49].)

[9] The court directs Mr. Dorsey towards the Seventh Circuit's recent guidance on this topic:

> As *pro se* litigants employ AI to assist with court filings, a basic reminder seems wise. Accuracy and honesty matter. Indeed, the submission of a legal filing constitutes a representation to a court and, as the Federal Rules of Civil Procedure put the point, both attorneys and unrepresented parties are certifying "that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances," the "factual contentions have evidentiary support" and the "legal contentions are warranted by existing law or a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." FED. R. CIV. P. 11(b)(2), (3); see also FED. R. APP. P. 38. Right to it, all litigants—represented and unrepresented—must read their filings and take reasonable care to avoid misrepresentations, factual and legal.

*Jones*, 164 F.4th at 970; *see also Turnage v. Associated Bank, N.A.*, No. 25-3004, 2025 WL 3052638, at *3 (D. Minn. Sept. 12, 2025) ("Every filing in a federal court that contains citations to phony case law amounts to a violation of Rule 11(b) of the Federal Rules of Civil Procedure. There is no *pro se* exception to Rule 11(b).").

## **CONCLUSION**

The motion to dismiss is granted in part and denied in part. Dorsey may proceed on his unlawful search and prolonged detention claims. Future amended complaints will be stricken and not considered. Defendants are directed to answer Dorsey's complaint within 21 days.

ENTER:

Date: May 28, 2026

_____
REBECCA R. PALLMEYER
United States District Judge